STATE, NEW JERSEY SOUTHERN RAILROAD COMPANY, PROSECUTORS, v. THE BOARD OF RAILROAD COMMISSIONERS.

1. A railroad corporation, whose railroad, including its rolling stock and equipment, is in possession of its mortgagees, who are operating the road under the mortgage, is, nevertheless, liable to taxation upon the valuation of its railroad, and its equipment and appendages, pursuant to the provisions of the act entitled "An act providing for state taxes on railroads, and the more efficient collection thereof." *Rev.*, *p.* 1168.

2. The statute above referred to makes a railroad corporation liable to taxation on its railroad, and its equipment and appendages, without regard to the fact that the railroad is not in the company's occupation or use, and the means provided for collecting the taxes by a sale of the franchises and property, real, personal and mixed, of the corporation, free and clear of all encumbrances.

3. Nor will a railroad corporation be relieved from taxation under the above mentioned statute, by the fact that the corporation is in the hands of a receiver, under an appointment of the Court of Chancery on proceedings against it as an insolvent corporation.

4. Placing the property of a corporation in charge of a receiver does not work its dissolution, nor is the title of the property changed: a power only is delegated to take charge of it and sell it.

5. The receiver of a corporation, appointed by the Court of Chancery, takes its property, including its franchises, in the same condition and subject to all the duties, obligations and liabilities that rested upon the corporation itself, and, in the administration of his office, is under obligation for the performance of every duty and obligation imposed upon the corporation by its charter, or by the general laws of the state.

On *certiorari.* In matter of taxation.

Argued at February Term, 1879, before Justices DALRIMPLE, DEPUE and SCUDDER.

For the prosecutors, *Barker Gummere.*

The single question submitted to the court is this:

"Are the railroad corporations, who are the prosecutors in *certiorari*, such corporations as are contemplated by and are

within the provisions of the act providing for state taxes on railroads, (*Rev.*, *p.* 1168,)" &c.

It is respectfully submitted that they are not, and for the following reasons:

1. The tax authorized to be assessed by this act, although a property tax, is still a *tax upon the person of the corporations*, which it will be observed are expressly declared to be "citizens" by section one hundred and one of the tax acts. *Rev.*, *p.* 1162. The tax is *in personam*, and not *in rem*.

The *individual* and not the property is *the object* of assessment, and *pays the tax* primarily; the property figures in *the assessment* only as the means of measuring the amount of the tax to be demanded from the person, and the tax is imposed upon *the person* of the owner *on account of his ownership* of the property. *Rundell* v. *Lakey*, 40 *N. Y.* 517; *Green* v. *Craft*, 28 *Miss.* 70.

And the cases in our own state recognize the indispensability of the assessment of a property being made *in the name of some person or corporation as the owner* of the property in respect of which such assessment is made. *State* v. *Vanderbilt*, 4 *Vroom* 38; *State* v. *Union*, 7 *Vroom* 309.

It may be urged, indeed, that these last cited cases are placed solely on the ground that *the statute* requires the owner to be named in the assessment; but *the necessity of naming some person or corporation* as the person assessed was recognized *long before the adoption of that provision*, although a lack of form in naming the person was not held fatal. *State* v. *Jersey City*, 4 *Zab.* 108, 116.

It will perhaps be argued that the second section of the act in question, (*Rev.*, *p.* 1168,) by making the assessment a lien on the property of the corporation, demonstrates that the assessment is *in rem* and not *in personam*—that it is the property which is assessed and not the owner. But the *Court of Errors*, at the term just closed, has deliberately determined that *the lien* of an assessment *is no part of the assessment*, but *purely a means for the collection of the tax*, and on this point

specifically overrules the contrary decision of the Court of Chancery. *Trustees of Public Schools* v. *Taylor*, 3 *Stew.* 618.

The provision for *a lien*, then, as a means of collection, can have no effect in determining the *object* of the *assessment*.

A particular inspection of the act in question shows that the intention of the legislature was in harmony with the fundamental rule that a property tax is assessed upon the owner, and that the property merely measures the amount of the tax the owner is to pay. *Rev., p.* 1168, &c.

Section one enacts that the *corporations* and *companies shall pay* an annual state tax, *if liable to be taxed;* and in the proviso to that section it is recited that certain railroad *companies are required to pay* tax; no doubt it will be urged that the section speaks of the annual state tax as "*upon* the true value of said railroads," &c., and therefore the railroads, &c., must be considered as intended to be assessed, and not the corporations. But if the word "upon" is to be construed as *defining the object* of assessment, it is clear that the tax is not assessed upon *the railroads, &c.,* but upon *the value* of such railroads, &c. The text taken together shows that "upon" is equivalent to the words "according to" or "in proportion to," and that the railroads, &c., are mentioned as *the measure of,* and not as the objects of taxation; and this intent is apparent upon reading the next provision, to wit, that the value of the railroads shall be the basis of fixing the rate of taxation, notwithstanding any different charter provisions.

Section two enacts that the officers of *the corporation* shall return under oath the value of the railroad, &c., and further provides that "the state tax *to be paid by* said railroad corporation or company shall be immediately due," &c. No doubt it will be urged that the section says that the property, the value of which is to be returned by the officers, is that "*whereon* said state tax is laid as aforesaid," and that the word "whereon" signifies that such property is the object of the assessment, and not the corporation; but it is submitted that it has already been shown that the "upon" which is referred to in the words "laid as aforesaid," is used only as

fixing the basis and measure of the assessment, and that "whereon" is to be construed as meaning "in respect to which," the whole sentence meaning "in respect to which said state tax is laid as aforesaid."

Section five enacts that "whenever any railroad corporation or company has failed to pay *its* state taxes," then the assessment shall be made a record of the Supreme Court, and judgment entered thereon *against the corporation or company as defendant;* and clearly recognizes that the assessment is against the corporation, and the liability being so fixed as personal, the judgment is also pronounced against the person; and accordingly the execution directed by this section is to be levied and satisfied out of *all* the property of the corporation, and not merely out of the railroad, and its equipment and appendages, as would be the necessary result if the assessment had been *in rem.*

Section six enacts "that in case of any dispute between the state and any railroad corporation or company as to *its* liability under this act," and thus clearly recognizes that the assessment is *in personam* and not *in rem.*

Section ten enacts "that if any corporation or company shall be *in default in payment* of the state tax aforesaid," then any mortgagee of such corporation may pay the tax, recognizing the personal character and personal burden of the assessment, for the corporation could not be in default unless assessed.

The result is that, both upon general principles and under the specific legislative provisions, this state tax is assessed upon the corporations and not upon the property.

2. There being then a particular class of *citizens* liable to be assessed for this state tax, it is submitted that the class so liable is accurately defined by the act itself, by *specific limiting words of description,* to wit, "all railroad corporations and companies *occupying or using railroads in this state,* whether as lessees or otherwise, &c., *shall pay an annual state tax,*" p. 1168, § 1; and the words "every railroad corporation or company," in section two, and "any railroad corporation or

company," in sections four, five, six and ten, are.limited by the descriptive words of section one, and will be construed to mean " every or any railroad corporation or company *occupying or using railroads in this state.*"

The propriety of this limitation, and the intent of the legislature, is plain; the corporations having the actual tenancy and use of the railroads, deriving profit therefrom and having the actual benefit of the franchises granted by the state, and enjoying the advantage of the state's protection, are, in return, to pay this *special tax.*

The owner, if not actually occupying or using the railroad, is *exempt from the special tax,* but remains subject to assessment for *all ordinary county, municipal, and local taxation. Rev., p.* 1170, § 7. Such is the plain intent.

*A fortiori* it was intended that insolvent corporations in the hands of receivers, incapable of deriving profit from and deprived of the use and occupation of their railroads, should not be assessed for this *special state tax*—such corporations are not within the intentionally specific words of the act, and they are not within the *fair intent* of the act.

All the prosecutors, as the state of the case shows, are in this position. Not one of them either occupies or uses any railroad in this state ; not one of them derives any revenue therefrom, or has any means or available source, by loan or otherwise, to obtain means for the payment of such special tax—they are all in the hands of the state courts, and deprived of the occupation or use of their roads. To subject them to the operation of this act would be to do violence to its plain words, to its fair meaning and intent, and to settled principles. It would not be the fair, reasonable and liberal construction of the act, but an arbitrary *extension* of its provisions, not judicial, but legislative, in its inherent qualities.

For the defendants, *John P. Stockton, Attorney General.*

I. The act of 1876 makes the state tax a lien prior to all other liens, of every nature and description, on the franchises and property, real, personal and mixed, of the corporations.

The railroad tax law of 1873 provided that railroad companies should pay, upon the cost, equipment and appendages of said railroads, respectively, a state tax  *  *  *  after the rate of one-half of one per centum upon such cost. *Pamph. L.*, 1873, *p.* 112.

The amended constitution provides that " property shall be assessed for taxes under general laws and by uniform rules, according to its true value."

It will be observed that in the act of 1876 the word "*cost*" is changed into "*true value,*" to conform to the above constitutional clause.

The first section of the act of 1876 provides " that all railroads, corporations and companies occupying or using railroads in this state, shall pay an annual state tax upon the true value of said railroads, their equipments and appendages, at the rate of one-half of one per centum upon such value."

The second section of the act of 1876 is as follows:

" 2. And be it enacted, That on or before the first day of February in each year, the president, secretary or treasurer of every railroad corporation or company shall, on oath or affirmation, make return to the comptroller of this state of the true value of said road, and of the equipment and appendages of said railroad, used by or belonging to said corporations or companies in this state, respectively, specifying the items, and the locality thereof, and further showing the true value of said property whereon said state tax is laid as aforesaid, specifying its particular items, *and their cost;* the comptroller shall forthwith file said return in his office, and, thereupon, the state tax to be paid by said railroad corporation or company, under this act, shall be immediately due and payable, with interest thereon from the first day of March, at and after the rate of ten per centum per annum, and said tax, and the interest thereon, shall be and remain a lien on the franchises and property, real, personal and mixed, of said corporation or company, and the lien of the state for said state taxes and interest shall be prior to all other liens, of every nature and description, on said franchises and property."

It appears, therefore, that the company is obliged to return to the comptroller the true value of its railroad, equipment and appendages; that the comptroller shall forthwith file said return in his office, and thereupon *the tax shall be immediately due and payable, and shall remain a lien prior to all other liens, of every nature and description, on said franchises and property.*

The constitution had provided that *property* should be assessed at its true value. The act provides that all the property of the company shall be returned at its true value, and the return filed, and the tax shall become immediately due and payable, and the lien prior to all other liens of every nature and description. The power is directly given by the constitution in the very words of the act, to wit, the assessment of property at its true value. The right to make it a prior lien to all encumbrances previously existing, has just been decided by the Court of Errors in the case of Inhabitants of the City of Trenton *v.* Trustees for the Support of Public Schools.

The insistment of the prosecutors is that, as by the act, the name of the corporation which reports, according to law, the true value of its "railroad, equipments and appendages," appears on the proceedings, that if that corporation is insolvent, and its affairs have been placed in the hands of a receiver, that the tax cannot be collected under the act, which is no more nor less than the negation of the constitutional provision, and the assertion of the converse of the proposition that the property of some railroads shall not be assessed at their true value.

The act provides that the lien is prior to all other liens of every nature and description. It is prior, then, to the lien of the bondholders, at whose instance the receiver is appointed. It is prior to the lien of the stockholder or the subsequent bondholder.

The Central Railroad of New Jersey is in the hands of a receiver, and yet its stock, which can represent only the value of the road after the payment of its enormous mortgage debt,

sells daily in the market at 40, and this road is precisely in the same condition as the road of the prosecutors.

If the principle contended for was sound, nearly $50,000,-000 of property in value, in one railroad alone, would escape taxation, notwithstanding the constitutional provision.

II. Property of a corporation placed in the hands of a receiver by a court of justice, is not thereby rendered exempt from the tax laws of the government within whose jurisdiction such property is situate. *Stevens et al.* v. *N. Y. & Oswego M. R. Co.*, 13 *Blatch.* 104.

Justice Blatchford says, in the above case, " I have heretofore decided that the property in the hands of the receivers was properly taxed as the property of the corporation. There is no prerogative of sovereignty which is of higher importance than the power of taxation, which includes the collection as well as the assessing of taxes. The very existence of the state as a government depends upon the exercise of such power."

The fallacy in the argument of the prosecutor is this : He treats a corporation in the hands of a receiver as an individual whose existence had been extinguished ; but this is not true, for not only is all the property returned by the corporation still here under the protection of our laws, and bound by the constitution to be taxed, but the receiver is simply the officer of the court holding the possession of the property for those whom it may concern. He is bound by all the obligations of the old corporation, and, first of all, to the payment of the taxes, because they are the prior lien. The returns in these cases of the true value were made by managers of the roads, appointed receivers, as officers of the court, representing the property of the corporation, and standing in its place, and the returns have been made in a similar manner by various railroads in this state being operated by receivers.

In *Klein* v. *Jewett*, 11 *C. E. Green* 474, the Vice Chancellor held that the receiver of the Erie Railway Company stood, in respect to duty and liability, just where the corporation would were it operating the road. " That whether the re-

ceiver is regarded as the officer of the law or the representative of the proprietors of the corporation, or its creditors, or as combining all their characters, he is trusted with the powers of the corporation, and must, therefore, necessarily be burdened with its duties, and subject to its liabilities."

The decree in the case is manifestly founded upon the *undisputed* doctrine that the receiver is an officer of the courts, holding possession for those who may be decreed to have the right. *His possession was their possession.*

Mr. Kerr, in his book on Receivers, says : " The effect of the appointment of a receiver is to remove the parties to the suit from the possession of the property. If, at the time a receiver is appointed, a party claiming a right in the same subject matter, under a title paramount to that under which the receiver is appointed, is in possession of the right which he claims, the appointment of a receiver leaves him in possession, but parties to the suit, who are not in possession under a paramount title, are removed from possession by the appointment of a receiver. If a party to the suit be appointed receiver, the same rule obtains.

" The appointment of a receiver, however, does not in any way affect the right to the property. The Court of Chancery, in a suit for a receiver, deals with the possession only, until the right can be determined, if the right be the subject matter in dispute between the parties, or until the encumbrances have been cleared off, if the appointment has been made at the suit of an encumbrancer. *Where the right is the subject matter in dispute, the receiver merely holds the property for whosoever may ultimately appear to be entitled to it.*" *Kerr on Receivers* 158, 159.

He refers to the case of *Evelyn* v. *Lewis,* 3 *Hare* 472, where the argument of Messrs. Cooper and Rolf, followed by the opinion of Vice Chancellor Wigram, would seem to leave no room for doubt or dispute on this proposition. A note in the American edition says : " That a receiver represents the interest of all the parties in the property, and that it is' his duty to protect it to the best of his ability for all those interested,

although that interest may be various and conflicting, or involved in doubt." ﹒ See *Iddings* v. *Bruen et al.*, 4 *Sandf.* 417; *Hutchinson* v. *Lord Massareene*, 2 *Ball & Beat.* 55; *Davis* v. *Duke of Marlborough*, 2 *Swanst.* 125; *Delany* v. *Mansfield*, 1 *Hogan* 234.

The opinion of the court was delivered by

DEPUE, J.   The New Jersey Southern Railroad Company . was organized as a corporation under the act of March 5th, 1858.   On the 14th of September, 1869, it executed a mortgage to trustees, to secure the payment of bonds issued in the amount of $2,000,000.   The mortgage included all the property and franchises of the company then possessed, or afterwards to be acquired.   In 1870 this company acquired nearly all the stock of the Long Branch and Sea Shore Railroad Company.   In the same year it organized the Pemberton and New York Railroad Company—being the owner of all the stock of that company—and constructed its railroad. · In the same year the New Jersey Southern company took possession of the railroads of the Long Branch and Sea Shore company and of the Pemberton and New York company, together with their equipments and appendages, and has operated and maintained the same exclusively as an integral part of its railroad from that time until possession was taken by the mortgagees.

In November, 1873, the trustees, as mortgagees, commenced foreclosure proceedings, and in January, 1874, the directors of the New Jersey Southern company surrendered to them the original railroad of that company, and its after-acquired railroads originally constructed by the Long Branch and Sea Shore company and the Pemberton and New York company, together with their equipments and appendages.   Since January, 1874, the trustees named in the mortgage have operated these several railroads, and used their equipments and appendages for that purpose as mortgagees in possession.   In February, 1874, on a bill filed by a creditor of the New Jersey

Southern company against it as an insolvent corporation, Robert F. Stockton was appointed receiver.

The Vineland Railway Company was organized in 1873. In February, 1874, a petition was filed in the Court of Chancery, by a creditor, to have the company declared insolvent, and Mr. Stockton was appointed receiver. The receiver immediately took possession of the railroad equipments and appendages of the latter company, and has ever since been, by himself or his lessee, in possession of and in the use and occupancy of the same.

In 1877 a state tax was laid on each of these corporations by the board of railroad commissioners, pursuant to the provisions of the act entitled "An act providing for state taxes on railroads, and the more efficient collection thereof," approved April 13th, 1876. *Rev., p.* 1168. The assessment was made against the corporations severally, and upon the valuation of the railroad and equipment and appendages of each.

These writs of *certiorari* were sued out to review the legality of such assessments, and the single question submitted by counsel is whether these several corporations, who are the prosecutors of these writs, are such corporations as are taxable under the provisions of the above-mentioned act.

The position assumed by counsel that the tax authorized by the statute is a tax *in personam*, and not *in rem ;* that the corporation is the *person* taxed, and that the property, with respect to which the tax is laid, enters into the assessment only as a means of determining the *quantum* of the tax imposed upon the person of the owner on account of the ownership of the property, is conceded to the full extent. Such was plainly the intent of the legislature, as expressed in this act, and the act of April 2d, 1873. *Rev., p.* 1166. The act of 1876 deals exclusively with taxation for state purposes. The title expresses the object of the act to be to provide " for state taxes on railroads." It applies to two classes of corporations— " railroad corporations and companies occupying or using railroads in this state as lessees or otherwise." The subsequent sections show that the legislature aimed exclusively at cor-

porations.  The machinery for laying and collecting the taxes shows that to have been the object.  The second section requires a return to be made annually to the comptroller of the state by the president, secretary or treasurer " of every railroad corporation or company " of the true value of said road, and of the equipment and appendages of said railroad " used by or belonging to said corporations or companies in this state," and thereupon the state tax to be paid by said railroad corporation or company under said act shall be immediately due and payable.  By section three, in case any of the said railroad corporations or companies shall fail to make returns, or shall make a return that the comptroller shall have reason to believe is untrue or insufficient, the railroad commissioners are required " forthwith to estimate the true value of the railroad of such defaulting corporation or company, and the true value of such equipment and appendages used by or belonging to said corporation in this state," and to ascertain and state the amount of state tax thereon, and to certify the same against the defaulting corporation or company.  By section four, appeal is given to " any railroad corporation or company which shall be aggrieved by the action of the railroad commissioners;" and by section five, if the tax assessed be unpaid for ten days, judgment shall be entered for the same in the name of the State of New Jersey as plaintiff, and against such corporation or company as defendant, on which execution shall issue for the sale of all the franchises, and all the property, real, personal and mixed, of said corporation or company.

But while conceding the premise on which the argument of counsel is founded, the conclusion sought to be deduced therefrom is not adopted.

It is contended that inasmuch as the prosecutors were not themselves in the occupation and use of their railroads, and did not derive any benefit or profit therefrom except as the earnings of the same were received by mortgagees and creditors, the prosecutors were not taxable for such property. This contention is based on the idea that the legislature intended that corporations of the designated class should be

taxable only in cases where the corporation is in the actual use of its railroad, and is deriving a profit to itself from the exercise of the franchise granted by the state.    The argument is founded on the words of the first section of the act, " railroad corporations and companies occupying or using railroads in this state." ., It was assumed that the words " occupying or using railroads in this state," apply to and qualify all that preceded them, and were intended to describe the circumstances under which a liability to taxation should arise. This assumption is unwarranted.    The language quoted was adopted to meet a condition of affairs well understood in this state.    Under legislative sanction, foreign and domestic corporations were authorized to lease and operate railroads constructed under powers granted to other corporations.    It was to meet the circumstances of such cases that the legislature added to the words, " railroad corporations," the additional description of " companies using or occupying railroads in this state, whether as lessees or otherwise."    The superadded words were designed to enlarge the scope of the taxation provided for, by including among the subjects of taxation such companies as well as railroad corporations proper, such as were created by our laws for railroad purposes.    It was never intended by the expression used to restrict the limits of taxation.    On the contrary, this comprehensive language was resorted to solely for the purpose of embracing not only corporations specially created for the construction of railroads, but also all companies, whether railroad corporations or not, which should be in the use or occupancy of any railroad in this state.    That no such condition as is contended for was contemplated is apparent from the sections of the act which specially designate the property with respect to which the tax should be laid.    In that connection the language employed is railroad equipment and appendages " used by or belonging to said corporations or companies," showing that the legislature intended to apply the power of taxation to all railroad property, either against the company which uses or occupies it by lease or otherwise, or against the corporation in which the

ownership is vested. When the railroad and its equipments and appendages are in the occupancy and use of the corporation which was empowered to construct and operate the railroad, the assessment must be made against it. If such property be in the possession and use of another company, the assessment may be made against either. Inasmuch as a sale under execution for the tax will pass the absolute title to all the franchises, and all the property, real, personal and mixed, of the corporation or company against which the assessment is made, free and clear of all encumbrances of every nature, the better course in all cases is to make the assessment against the company originally invested with the franchises, and in which the ultimate title to the road, its equipment and appendages is vested, without regard to the possession and use of the road by another.

From what has already been said, it is quite manifest that possession of the road, and its equipment and appendages, by mortgagees, will not defeat the statutory mode of taxation, or exonerate the company from liability to taxation upon its property. As has already been shown, the liability to this taxation is personal to the corporation itself. The property mortgaged belongs to the corporation, only subject to the mortgage, and the possession of the mortgagees is the possession of the company, by whose act they have entered. A corporation cannot avoid the performance of any duty or obligation imposed upon it by its charter, or by the general laws of the state, by surrendering its property and franchises to others, whether as lessees or mortgagees. *Railroad Co.* v. *Brown,* 17 *Wall.* 450; 1 *Redf. on Railways,* § 142. The statute makes no deductions or allowance for mortgage indebtedness. On the contrary, it overrides the title of mortgagees by placing the tax in priority over encumbrances, and specially provides for redemption from the lien of the tax by mortgagees, by subrogation to the rights of the state, on the payment by them of the taxes. No embarrassment can arise from the inability of the corporation to pay, because of its property being in the hands of its creditors. The statute

provides for that contingency. It takes the franchises and all property, real, personal and mixed, of the company, discharged from all other liens and encumbrances, to satisfy the taxes that may be imposed.

Nor will the fact that these corporations are also under a receivership interdict the imposition of these taxes. Receivers may be appointed in a great variety of cases. Illustrations of the instances in which receivers may be appointed, rather than indications of the limits of the jurisdiction, will be found in the following enumeration: Receivers may be appointed for the protection of estates of lunatics and infants; the preservation of trust estates; pending litigation for the probate of wills, or the settlement of disputes between partners, tenants in common, tenants for life and remaindermen, vendors and purchasers, covenantors and covenantees, mortgagees of common property, and as a means of enforcing the claims of creditors against their debtors. Indeed, there can scarcely be a case of trust, disability or indebtedness, or of a common ownership of property, or of disputed rights therein, in which chancery may not resort to a receivership, where it is necessary for the preservation of property pending a litigation, or essential to the administration of justice. If, in all these cases, the power of the state to tax property in the care of receivers is superseded, the consequences would be highly prejudicial to the public interests.

The appointment of a receiver is a mere mode of procedure for the administration of justice. He is a mere custodian of the property, holding for the common benefit of all interested therein. Placing the property of a corporation in charge of a receiver does not work its dissolution, nor is the title of the property changed: a power only is delegated to the receiver to take charge of it, and sell it. *Willink* v. *Morris Canal Co.*, 3 *Green* 377; *Kincaid* v. *Dwinelle*, 59 *N. Y.* 548. He takes the property of the corporation, including its franchises, in the same condition and subject to all the duties, obligations and liabilities that rested upon the corporation itself, and in the administration of his office is under obligation for the per-

formance of every duty and obligation imposed upon the corporation by its charter, or by the general laws of the state.

The appointment of a receiver as the means of protecting the private rights of individuals, cannot affect the rights of the state. The state is still sovereign. Its sovereignty can only be secured by maintaining its powers of taxation, and there is neither any sound principle nor authority upon which the property of a person, or a corporation, which is placed in the hands of a receiver for the purposes of a litigation, can be regarded as thereby rendered exempt from the operation of the tax laws of the government within whose jurisdiction such property is situated. *Stevens et al.* v. *N. Y. & Oswego M. R. Co.*, 13 *Blatch.* 104.

The assessments were properly made against the prosecutors, and should be affirmed.