## Railroad Company *v.* Brown.

1. An act of Congress, in cases of a suit against a railroad company which it incorporated, authorized service of process "on any director of the company." On a suit brought, the marshal made a return of service, July 6th, 1868, on J. S., "*reputed* to be one of the directors of the company." The record showed that on the 5th of May, 1866, J. S. was, in fact, one of the directors. *Held,* sufficient service, in the absence of proof, that J. S. was not one of the directors at the time of service; and

---

* 14 Stat. at Large, 611.

the defendant having appeared and moved, for want of sufficient service, the opening of a judgment which had been obtained for default; which motion as asked for, the court refused, but granted on condition that the defendant appeared; which he did, and proceeded to trial.

2. A railroad corporation run on the joint account of a receiver of part of it and the lessees of the remaining part, *held* liable for injuries committed, by a servant of the parties working it, upon the person of a passenger whom such servant improperly expelled from a car, into which the passenger had entered; the railroad corporation having allowed tickets to be issued in its own name, in the same form as it had done before the road was leased, and the passenger, for aught that appeared, not knowing that the railroad corporation was not itself managing the road.

3. An act of Congress passed in 1863, which gave certain privileges which it asked to a railroad corporation, enacted also that "no person shall be excluded from the cars on account of color." *Held*, that this meant that persons of color should travel in the same cars that white ones did, and along with them in such cars; and that the enactment was not satisfied by the company's providing cars assigned exclusively to people of color, though they were as good as those which they assigned exclusively for white persons, and in fact the very cars which were, at certain times, assigned exclusively to white persons.

ERROR to the Supreme Court for the District of Columbia; the case being thus:

In the year 1854, Congress authorized the Alexandria and Washington Railroad Company,* a company which had been incorporated by the State of Virginia, and whose road began at Alexandria, a town seven miles south of Washington, and ran northward to the south side of the Potomac, to extend their road *into* the District of Columbia, in a way designated.

The act of incorporation provided that in case of suit against the company "the service of process . . . may be made on . . . *any director of the company.*"

In 1863, the company got a further grant of power,† authorizing it to extend its road northward, so as to connect itself with the Baltimore and Ohio Railroad. This grant was, however, accompanied with a provision, "that no person shall be excluded from the cars on account of color."

In 1866, the Washington, Alexandria, and *Georgetown*

---

* 10 Stat. at Large, 810, § 3.                    † 12 Id. 805.

Railroad Company, which had succeeded to the chartered rights of the old Alexandria and Washington Company, obtained from Congress an amendment* to the last-mentioned act—the act of 1863—so as to change the route of extension, and for other purposes. This act speaks of "the Washington, Alexandria, and Georgetown Railroad Company," as "a corporation lawfully succeeding to the charter, rights, and privileges of the Alexandria and Washington Railroad Company." The road, under its new name, was at the time of this act leased to two persons named Stevens and Phelps. The new company not very long after fell into pecuniary difficulties, and the portion of it within the District of Columbia, by a decree of the Supreme Court of the District, was placed in the possession of a receiver, and the whole road was worked on the joint-account of the lessees on the Virginia side and the receiver on the District side.

In this condition of things, one Catharine Brown, a colored woman, on the 8th of February, 1868, anterior to the adoption of the fourteenth and fifteenth amendments to the Constitution, bought a ticket to come from Alexandria to Washington. The ticket was issued in the name of "the Washington, Georgetown, and Alexandria Railroad Company;" as were, indeed, all the tickets at each end of the route. No tickets were distinguished as for white persons or colored persons, nor for any particular sort or class of cars. All were exactly alike.

When the woman went to take her place in the cars there were standing there two cars, alike comfortable; the one, however, set apart for colored persons, and the other "for white ladies, and gentlemen accompanying them;" the regulation having been that in going down from Washington to Alexandria, the first should be occupied by the former, and the last by the latter; and that in coming back the use should be simply reversed. When about to get into one of the cars, a servant of the persons managing the road, stationed near the cars to direct passengers, told the woman

---

* 14 Stat. at Large, 248.

not to get into the car into which she was about to' enter, but to get into the one before it; that he had been instructed by persons in charge of the road not to permit colored persons to ride in the car in which she was getting, but to have them go in the other.  The 'woman, however, persisted in going into the car appropriated for white ladies, and the man put her out with force, and, as she alleged, some insult.  She then got into the car into which she had been directed to get—the one' assigned to colored people—was carried safely into Washington and got out there.

Hereupon she sued the *Washington, Alexandria, and Georgetown Railroad Company* in the Supreme Court of the District.

The marshal of the District made return that he had "served copy of summons and declaration on Joseph Stewart, *reputed to be* one of the directors of the company, the defendant." Judgment was entered by default, and the question of damages referred to a jury for inquisition.  The company afterwards moved to set aside the judgment because no sufficient service had been made.  The court refused to grant this motion as thus asked for; but granted it on the entry of an appearance in ten days by the company and the receiver; and ordered the case to be put on the calendar for trial.  The case was tried.  On the trial evidence was introduced by the defendant tending to show that the ejection had not been with insult or unnecessary force; that the regulation of separating white from colored persons was one which was in force on the principal railroads in the country; that unless the said regulation had been adopted on this road, travel upon it would have been seriously injured; and that the establishment of such a regulation itself increased the expenses of the road considerably, and that without such a regulation the receipts of the road would have decreased.

The counsel of the company requested the court to instruct the jury:

1st. That on the evidence there had not been due service of process on the defendant, and that the plaintiff could not recover.

2d. That if the injuries complained of were received when the road was in the possession of the lessees and receiver,—worked and conducted by them,—the verdict should be for the defendant.

3d. That if by a standing regulation certain cars were appropriated and designated for the use of white persons, and certain others for the use of colored, and all the cars were equally safe, clean, and comfortable, and if this sort of regulation was one in force on the principal railroads of the country, and one which unless it had been adopted on this road, the travel on it would have been seriously injured and the receipts of the road decreased, and if the establishment of such a regulation itself increased the expenses of the road considerably—then, in case no insult nor greater force than was necessary had been used, and the plaintiff after taking a seat in the car appropriated for colored persons, was carried safely into Washington and got out there—that the plaintiff could not recover.

The court refused to give any one of the instructions, and a verdict having been given in $1500 for the plaintiff and judgment entered on it, the company brought the case here, assigning as three causes of error the refusals to give the charges requested.

*Messrs. T. T. Crittenden and D. Clarke, for the plaintiff in error; Messrs. S. R. Bond and W. A. Cook, contra.*

Mr. Justice DAVIS delivered the opinion of the court.

There are but three points in this record which the assignments of error bring before us for review, and only the last relates to the merits of the controversy.

1. It is objected that the Circuit Court did not acquire jurisdiction of the defendant below for want of proper service of process. But this objection is not well taken, because the process was served on Stewart, a director of the road, and this service was in conformity to law.*   It is true

---

\* 10 Stat. at Large, 810, § 3.

the marshal does not return as a fact that Stewart was a director, only that he was reputed to be so, but the record shows he was a director when the road was leased, and in the absence of proof to the contrary, it will be presumed this relation existed when the summons in this case was served. Even if the service were defective, the plaintiff in error is not in a position at this time to except to it. The record discloses that, soon after the action was commenced, a judgment by default was entered for want of a plea, and that the plaintiff in error appeared by attorney and moved the court to set it aside on the ground that there had been no sufficient service of process. This motion was denied for the reason stated, but the court ordered the default to be opened and the cause placed on the trial calendar, on the condition that the appearance of the plaintiff in error was entered by the receiver within a period of ten days. This order was, doubtless, made in order to give the company an opportunity to defend, and at the same time to set at rest the point raised about the service in case the merits of the action were tried. The condition thus imposed was complied with, and for aught that appears, the subsequent litigation has been conducted on the part of the company by its voluntary appearance in every stage of the case.

2. The second assignment of error denies the liability of the corporation for anything done while the road is operated by the lessees and receiver.

It is the accepted doctrine in this country, that a railroad corporation cannot escape the performance of any duty or obligation imposed by its charter or the general laws of the State by a voluntary surrender of its road into the hands of lessees.* The operation of the road by the lessees does not change the relations of the original company to the public. It is argued, however, that this rule is not applicable where the proceeding, instead of being voluntary, is compulsory, as in the case of the transfer of possession to a receiver by a decree of a court of competent jurisdiction. Whether

---

* 1 Redfield on the Law of Railways, 5th ed., chap. 22, § 1, p. 616.

this be so or not, we are not called upon to decide, because it has never been held that the company is relieved from liability, unless the possession of the receiver is exclusive and the servants of the road wholly employed and controlled by him. In this case the possession was not exclusive, nor were the servants subject to the receiver's order alone. On the contrary, the road was run on the joint account of the lessees and receiver, and the servants employed and controlled by them jointly. Both were, therefore, alike responsible for the act complained of, and if so, the original company is also responsible, for the servants under such an employment, in legal contemplation, are as much the servants of the company as of the lessees and receiver.

Apart from this view of the subject, the ticket on which the plaintiff rode, was issued in the name of the Washington, Georgetown, and Alexandria Railroad Company, as were all the tickets sold at both ends of the route. The holder of such a ticket contracts for carriage with the company, not with the lessees and receiver. Indeed, there is nothing to show that Catharine Brown knew of the difficulties into which the original company had fallen, nor of the part performed by the lessees and receiver in operating the road. She was not required to look beyond the ticket, which conveyed the information that this road was run as railroads generally are, by a chartered company. Besides, the company having permitted the lessees and receiver to conduct the business of the road in this particular, as if there were no change of possession, is not in a position to raise any question as to its liability for their acts.

The third and last assignment of error asserts the right of the company to make the regulation separating the colored from the white passengers.

If the defendant in error had the right to retain the seat she had first taken, it is conceded the verdict of the jury should not be disturbed.

It appears that the Washington and Alexandria Railroad Company, in 1863, was desirous of extending its road from

the south side of the Potomac near to the Baltimore and Ohio depot, in Washington, and Congressional aid was asked to enable it to do so. The authority to make the extension was granted,* and the streets designated across which the road should pass. This grant was accompanied with several provisions, among the number was one that no person shall be excluded from the cars on account of color. In 1866, the plaintiff in error, which had succeeded to the chartered rights of the previous company, obtained from Congress an amendment to the former act, so as to change the route of the extension, and for other purposes.† The latter act leaves all the provisions of the former act in full force, and the present company, therefore, is obliged to observe in the running of its road all the requirements imposed by Congress in its previous legislation on the subject. This leads us to consider what Congress meant in directing that no person should be excluded from the cars of the company on account of color.

The plaintiff in error contends that it has literally obeyed the direction, because it has never excluded this class of persons from the cars, but on the contrary, has always provided accommodations for them.

This is an ingenious attempt to evade a compliance with the obvious meaning of the requirement. It is true the words taken literally might bear the interpretation put upon them by the plaintiff in error, but evidently Congress did not use them in any such limited sense. There was no occasion in legislating for a railroad corporation to annex a condition to a grant of power, that the company should allow colored persons to ride in its cars. This right had never been refused, nor could there have been in the mind of any one an apprehension that such a state of things would ever occur, for self-interest would clearly induce the carrier—south as well as north—to transport, if paid for it, all persons, whether white or black, who should desire transportation. It was the discrimination in the use of the cars

---

* 12 Stat. at Large, 805.                     † 14 Id. 248.

on account of color, where slavery obtained, which was the subject of discussion at the time, and not the fact that the colored race could not ride in the cars at all. Congress, in the belief that this discrimination was unjust, acted. It told this company, in substance, that it could extend its road within the District as desired, but that this discrimination must cease, and the colored and white race, in the use of the cars, be placed on an equality. This condition it had the right to impose, and in the temper of Congress at the time, it is manifest the grant could not have been made without it. It was the privilege of the company to reject it, but to do this, it must reject the whole legislation with which it was connected. It cannot accept a part and repudiate the rest. Having, therefore, constructed its road as it was authorized to do, and in this way greatly added to the value of its property, it will be held to a faithful compliance with all the terms accompanying the grant by which it was enabled to secure this pecuniary advantage.

In our opinion there is no error in the record, and the judgment below must be

AFFIRMED.