Filed December 12, 1895.

---

No. 16,715.

BALTIMORE AND OHIO AND CHICAGO RAILROAD COM-PANY *v.* PAUL.

RAILROAD.—*Personal Injury of Brakeman.—Train Running on Track of Another Company.—Negligence of Fellow-Servant.*—A railroad company is not liable for an injury to a brakeman in the service of another railroad company, caused by the negligence of his fellow-servant on a train owned and operated by his employer, merely because the injury was received while the train was running on the road of the former.

SAME.—*Interrogatories to Jury.—General Verdict Overthrown.—Personal Injury of Brakeman.*—A general verdict for plaintiff in an action for negligent injuries, under a complaint based on the theory that a brakeman was employed by defendant, is overthrown by special answers to interrogatories to the effect that plaintiff was not in defendant's employ, but in the employ of another railroad company, which owned, controlled, and operated the train which injured him.

From the Steuben Circuit Court.

*J. H. Collins* and *J. E. Rose,* for appellant.

*R. W. McBride, W. L. Penfield* and *L. M. Ninde,* for appellee.

HACKNEY, J.—The distinct theory of the appellee's complaint was that the appellant was the owner and operator of a line of railway, in the operation of which it employed him as a brakeman; that in the course of his

said service, the appellant negligently supplied to him certain defective appliances, and negligently employed a reckless and incompetent engineer; that, by reason of such negligence of the appellant, the appellee sustained injuries, for which he sought damages. A jury returned a general verdict in favor of the appellee, and answered certain interrogatories. One question in this court arises upon the action of the circuit court in overruling the appellant's motion for judgment in its favor, notwithstanding the general verdict. The parties agree in the conclusion that if the answers to the special interrogatories stand in irreconcilable conflict with the general verdict, the verdict must go down, and the appellant should succeed, otherwise that, upon this question, the appellee should succeed. It is also agreed that, in passing upon the alleged conflict, the court should indulge, in favor of the general verdict, every reasonable hypothesis consistent with the issues, and without reference to the evidence. The propositions, in which the parties thus concur, are of constant application, and admit of no doubt. Upon the general verdict and the special answers of the jury, there is no dispute that the appellant owned the railway, upon which the appellee was injured, but the bitterest conflict arises between the parties as to the issues—that the appellant was operating the line, and that the appellant was the employer of the appellee, or in any manner responsible for his misfortune. Of the special answers returned by the jury were the following:

"7. Are there two separate and distinct railroad corporations, one called the Baltimore and Ohio and Chicago Railroad Company, and the other the Baltimore and Ohio Railroad Company? Ans. Yes.

"9. Did one of said railroad companies operate, own and control the train of cars by which the plaintiff was

injured?  Ans.   Yes, the Baltimore and Ohio Railroad Company.

"10.   Did the Baltimore and Ohio and Chicago Railroad Company own, operate or control the train of cars by which the plaintiff was injured?   Ans.   No.

"11.   What railroad company, if any, paid the plaintiff for his labor?   Ans.   The Baltimore and Ohio Railroad Company."

The thirteenth, fourteenth and fifteenth answers find that the trainmaster of the Baltimore and Ohio Railroad Company employed the appellee, and that, when injured, he was in the service of that company.   Reducing these special answers to their exact import, they find that there were two distinct corporations, the appellant and the Baltimore and Ohio Railroad Company; that the latter company, and not the appellant, owned, controlled and operated the train by which the appellee was injured, and that the appellee was employed by, was serving, and was paid by the latter company.   Here is an apparent conflict.   The general verdict finds, presumptively, that the appellant was the master of the appellee, and, as such, owed him the duty of protecting him against its negligence in supplying defective appliances and reckless or unskilled co-employes.   This was, as we have shown, the theory of the action, and the issue submitted.   But the jury find specially that the appellant was not the master of the appellee, and that another owed the duty charged and found generally against the appellant.   Can this conflict be reconciled upon any reasonable presumption, consistent with the issues?   The appellee's counsel urge several supposed contingencies, in which the facts, specially found, would not stand in conflict with the general verdict.   They say:  "Our contention is that, unless the special findings show by what right, or

authority, the B. & O. R. R. Co. operates this railroad in Indiana, and show that such right, or authority, is conferred by a statute empowering one railroad company, a domestic corporation, to abrogate and abandon the sovereign franchise, delegated to it by the State, and transfer to another corporation the attribute of sovereignty, delegated to it, in such a manner, so prescribed by statute, as to exonerate the proprietor of the railroad from liability for the acts of the other corporation, in operating its road—whether as assignee, servant, agent, partner, stockholder, lessee, licensee, or trespasser—the proprietary corporation remains jointly or severally liable, at the option of the plaintiff, precisely the same as if it continued in the sole, rightful and lawful management of its railroad." If this were an action by a stranger to the operating company, this argument would appear to possess much strength, and we are not prepared to say that the charter company could, by any of the methods suggested, escape liability for an injury done, by one permitted to employ its functions, to another—a member of the general public to whom the charter company owes duties, arising as the consideration for charter privileges—without having delegated those functions by virtue of, and pursuant to, authority under the law.

Here we have no such question. Whatever the attitude of the operating company, that also is the attitude of the appellee, since he was an operative of the operating company, and the appellants so far from any liability owed him no duty whatever, unless possibly, that of doing him no willful injury. By the answers to interrogatories we learn that the companies were distinct; that the appellant was not the appellee's master; that the Baltimore and Ohio Railroad Company employed him, paid him, and owned, controlled and operated the train that injured him. If the latter company operated

as a trespasser or a licensee, no liability could exist as against the appellant. *Parker, Admr.*, v. *Pennsylvania Co.*, 134 Ind. 673 (23 L. R. A. 552); *Faris* v. *Hoberg*, 134 Ind. 269; *Woodruff, Admx.*, v. *Bowen*, 136 Ind. 431 (22 L. R. A. 198).

This conclusion is reached by the ordinary rule, but have we here an exception to the ordinary rule? This appellee's contention has strong support in authority if it has application to the case in hand. The rule so contended for and its reason are tersely stated in 19 Am. and Eng. Ency. of Law, p. 899, note 2, as follows: "The lessor, in consideration of the grant by its charter of extraordinary rights and privileges, has assumed a *quasi* public character, and becomes subject to unusual obligations towards the public, and public policy requires that it should not be allowed to release itself therefrom, by transferring its rights and franchises to a lessee, without express legislative consent." Many cases are cited in support of the text. In all of the cases and text writings we have examined, the rule has been stated with reference to the obligations of the charter company to the public, and which are created by the enactments of State Legislatures, or by the franchise, as where some duty is enjoined upon such company by the charter or laws of the State as to the maintenance of a right of way, the regulation of speed of trains, the protection of travelers upon highways crossing the railway, the charges as a common carrier of passengers or freight, the protection of live stock by fences along the line of way, and other obligations to the public, not involving a mere private contractual relation. With this rule we have no disagreement, but we deny its application to the case in hand. Our researches have discovered but two cases where the owning company was sought to be made liable for an injury to the servant of the operat-

ing company, resulting from the negligence of the master.

In the case of the *East Line, etc., R. W. Co.* v. *Culberson,* 72 Texas 375 (3 L. R. A. 567), 38 Am. and Eng. R. Cas. 225, the conductor of the operating company's train was injured by the alleged negligence of such company in supplying a defective engine, and employing a careless engineer.

The suit was against the owning company, and, at the trial, it offered to prove that the conductor was in the employ of another company at the time, using defendant's railway. The offer was excluded. There was no offer to prove that the operating company was a lessee by virtue of any statutory authority, and in considering the question, the court treated the operating company as possessing no valid lease. The court stated the question presented in these words: "We have then the question of the right of a servant of a railway company operating without authority of statute a road belonging to another corporation, to recover of the owner damages for personal injuries resulting to him in the course of his employment through the negligence of his employer, or of its officers or agents." In the course of the opinion it was said:

"There have been numerous decisions in other States holding the lessor liable when the lease is unauthorized for injuries to live-stock and to persons crossing the track, caused by the negligence of its lessees. So that it may now be considered the accepted and settled doctrine, that in all cases where one railroad company is operating trains upon the road of another without authority of law, the owner of the road remains responsible for the discharge of its duties to the public and becomes liable for injuries resulting from the lessee's failure to perform their duties. The lessor by accepting

its charter assumes the obligation to carry passengers safely over its line.    If it entrusts that duty to another company and a passenger is injured it is responsible. It binds itself to carry all freight offered to it and to deliver it safely.    Should its lessee fail to do this it is liable.    It assumes to operate its road safely and carefully, so as not to negligently destroy or damage property and not to injure persons who have the right to pass on or near the track.    Should its lessee negligently do damage to property or inflict personal injuries upon wayfarers crossing the road this is a failure of duty on its part and it is responsible for the wrong.    But the duties which are owed by a railroad company to its servant are not duties owed to him in common with the public but grow out of the contract of service.    He assumes the relation of servant to his employer voluntarily, and out of it arises the reciprocal obligations from one to the other.    It seems to us that the relation of the servant of the company operating the road to the owner is very different from his relation to his employer, and that the relation of the owner of the road to him is different from its relation to the general public.    His contract is not with the company owning the road, and it may be asked, does the latter owe him the duty of a master to a servant or guarantee that the master with whom he has voluntarily contracted will perform its obligation to him?    It may be that if the injury had occurred by reason of a defect in the roadbed or track and not by reason of a defect in the engine, the company charged with the duty of keeping up the road would be liable.    But if it were true that the injury was caused entirely by another company operating the owner's road and was inflicted upon one of its own employes by reason of a defect in machinery entirely under its control, it is difficult to see upon what princi-

ple of policy or justice the lessor should be held liable merely because it owned the road.

"In the case proposed to be made by the evidence offered it seems to us that the liability of the deceased's employer would have been precisely the same on the defendant's road as if the train had been running upon its own at the time of the accident. The act of the Missouri, Kansas & Texas Co. in operating the road without a license from the Legislature, if such was the fact, was merely illegal in the sense that it was unauthorized, and the object in holding the lessor responsible in such a case is certainly not to impose a mulct or fine by way of punishment. The reason for the rule is the protection of the public who need the protection. The passenger and the shipper of goods have no option, but must avail themselves of the services of the lessees, whether the lease is authorized or not. The law will not permit the owner of the road to shirk its duty to them by turning over its road to another company; nor will it permit it to deny its liability when it has allowed such other company without authority of law negligently to injure wayfarers over the track or property along the line. There is no privity between the persons injured in such a case and the operating company. It is not so with an employe who voluntarily enters the service of the latter company with a knowledge of the facts and participates knowingly in the wrong, if wrong it be. Where in similar cases a recovery has been permitted against a lessor, it has usually been allowed upon various considerations of public policy: First, because the franchises granted are in the nature of a personal trust, and sound policy demands, so far as the general public is concerned, that the corporation receiving the grant should be held responsible for the proper execution of the powers granted; and, second, for the reason that

to deny the responsibility of the lessor would enable a railroad to shirk its responsibility, and to injure the public by placing its property under the control of irresponsible parties; and, third, because a person who had received an injury at the hands of the operating company, and was ignorant of the relations between that company and the owner of the road might be at a loss to determine against which to bring his action and thereby placed at a disadvantage in seeking redress of his wrongs. None of these reasons apply in the case of the servant of a lessee who is injured through the neglect of his employer. He needs no protection as one of the general public, because he can enter the service or not, as he chooses. He is under no compulsion to take employment from an irresponsible company, and he certainly knows whom to sue for a wrong inflicted through his employer's neglect, for the latter is certainly liable to him in such a case. The reason of the rule which holds the lessor liable fails in case of an employe of the lessee, and we think that to follow it in a case like this would be to give it an arbitrary and not a reasonable application."

The case of the *Macon, etc., R. R. Co.* v. *Mayes,* 49 Ga. 355, is cited by some of the text writers as in conflict with the last cited case. There the president of the company was also a member of a construction company engaged in constructing the road. He required the plaintiff, a servant of the latter company, to act as fireman on a locomotive which was to carry him to a distant station. *En route* the locomotive collided with a train carrying the officers of the railway company in the opposite direction. In the collision the plaintiff was injured and he sued the railroad company. The court held that the railroad company was negligent in running the official train at high speed over a new line without schedule

and without warning. It held also that the injured servant while acting under the special direction of the president of the railway company was the servant of that company. After thus establishing the liability of the railway company it was said: "It cannot, as it seems to us, be presumed that it was within the intent of the Legislature to grant to this corporation this extraordinary privilege of flying through the country, across the public roads, puffing and screaming and rattling so as to disturb the public quiet, and force everybody to get out of their way, with the additional privilege of turning the right over to any other person at its pleasure." Upon the intent thus determined, the court applied the rule for which the appellee here contends, but it was not with an apparent consciousness that the rule had no application if the injured plaintiff could be considered as a servant of the company whose negligence directly caused the injury. Nor was it seemingly observed that, if a servant of the construction company, the negligence of the railway company having directly caused the injury, the recovery was against the latter company, regardless of the rule as to others using the way. Considering the decision in the light of the rule, and unembarrassed by the inconsistencies suggested, its reasoning does not commend itself to our judgment with the force of the case of *East Line, etc., Co.* v. *Culberson, supra.*

The answers to interrogatories preclude any possible joint or servient relations between the operating company and the appellant. If the Baltimore and Ohio Railroad Company operated under a lease, a presumption of the invalidity of the lease would not, as we have shown, affect the question, while, if that company was a licensee, or a trespasser, the liability of the appellant would be but the further removed.

It is urged by one of the appellee's learned counsel

that the question as to the relationship existing between Paul and the appellant is immaterial, and that the important inquiry must be as to relationship existing between the alleged negligent engineer and the appellant. Thus it is intended, we presume, to argue that it was possible that the engineer was the appellant's servant, and that, if so, indulging all reasonable presumptions in favor of the general verdict, that presumption would support the general verdict. The answers to the ninth and tenth interrogatories, above quoted, find that the train was owned, controlled and operated by the Baltimore and Ohio Railroad Company, and was not owned, operated or controlled by the appellant. In the light of the issue made by the pleadings, and of these answers it is not a reasonable presumption that the engineer was a servant of the appellant. Another weakness in this position is found in the familiar rule of practice that the pleadings must outline some single definite theory upon which the action is based, and that the parties are bound by that theory. Here, as we showed at the outset, the theory of the case was not only that the negligent engineer was a servant of the appellant, but that the violated duty of the appellant to the appellee was in neglecting to protect him, as its servant, from unassumed risks of the service in which it engaged him. Now, when confronted with a finding that he was not an employe of the appellant and that that company owed him no duty, as his master, it is not consistent with that theory to say that the engineer was a servant of the appellant, and that company must respond for his negligence, though the appellee was not an employe of the appellant, and that company owed him but the duty owing to any mere stranger.

In our opinion, the special answers of the jury were

irreconcilably in conflict with the general verdict, and the lower court erred in giving judgment for the appellee. The judgment is reversed, with instructions to sustain the appellant's motion for judgment *non obstante*.

Filed April 23, 1895; petition for rehearing overruled December 12th, 1895.