COOK, J., dissenting.
The plaintiff was a brakeman in the service of the Southern Railway Company (lessee of defendant), on a freight train, and was injured in making a coupling between a box-car and the shanty-car "with a link and the oldstyle draw-head." The shanty-car was not equipped with automatic couplers, nor was the train fully equipped with Janney couplers, or other modern self-coupling devices, and the Court charged the jury, citingGreenlee v. Railroad, 122 N.C. 977, 65 Am. St. Rep., 734 — since followed in Troxler v. Railroad, 124 N.C. 189, 70 Am. St. Rep., 580, and other cases — as follows: "If you find that the freight train was not fully provided with modern self-acting couplers, and that the plaintiffwould not have been injured had the cars been so provided, you will find the first issue `Yes' and the second issue `No.' " The Judge followed the decisions of this Court, and, without repeating the argument therein, it is sufficient to say that we re-affirm our former rulings holding a railroad company responsible for injuries to its employees which would not have occurred if there had been provided by it those humane devices protecting the lives and limbs of its employees, which are in general use. The reports of the United States Intercommerce Commission, issued by the authority of the Federal government, show the reduction of many thousands annually in the number of employees killed or maimed in coupling cars since the introduction of automatic couplers (which now is compulsory under the act of Congress as to all interstate roads). This should *Page 356 
be a sufficient answer to all complaints as to our former ruling. If the lives and limbs of employees can be saved by such provision of improved appliances, public policy and humanity require the Courts to exact liability for failure to furnish them.
The principal point made, however, is in the effort to induce this Court to overrule a still longer line of decisions which hold this lessor, the North Carolina Railroad Company, liable for the act and defaults of its lessee, the Southern Railway Company. The charter of the North Carolina Railroad Company, Laws 1848-9, Chap. 82, sec. 19, authorize the company "to farm out its right of transportation over said railroad, subject to the rules above mentioned." There are no other words from which a right to lease the road can be inferred. As at the date of the charter railroads were comparatively new, and the popular idea was that a railroad company was to maintain the road-bed and "farm out" rights of transportation over it, as was the case with canal companies, and is to-day the case with express companies and many "fast freight" and "through lines," it was thought by many that these words did not authorize, and were not intended to authorize, a lease of its entire property, which lease had the effect to take it out of a "State system" running from the mountains to the seacoast under State control, and make it a part of an interstate line running North and South, under the control of foreign corporations, to the utter destruction of the "State system" intended by the charter of the defendant. The authority to lease, based upon the permission "to farm out its rights of transportation," came before this Court in State v. Railroad,72 N.C. 634, and that expanded construction was sustained by a divided Court, Judge Settle writing the opinion, Judge Bynum dissenting in a remarkably able opinion. Judge Rodman did not sit. If it were a new question, this Court might possibly hold with Judge *Page 357 
Bynum as to the reasonable construction of the meaning of the words "to farm out the right of transportation," but the lessee would rely upon the fact that it took its lease relying upon the construction placed by this Court upon the meaning of those words. But it also made its lease subsequent to the decision of this Court — often since repeated — that those words did not allow the lessor to rid itself, by any lease made under authority conferred by those words, of liability for any acts or negligence or torts committed by the lessee as to the world, its passengers or its employees, the latter being held in effect to be simply sub-employees of the lessor, employed by its agent for the operation of the road, its lessee.
In Aycock v. Railroad, 89 N.C. 321 (1883), it had been held, Smith, C. J., the authorities "fully sustain the proposition that the defendant company leasing the use of its road or permitting the use of it by another company, remains liable for the consequences of the mismanagement of the train in charge of the servants of the latter and the injury thence resulting, to the same extent as if such mismanagement was the act or neglect of its own servants operating its own train," citing the authorities.
In Logan v. Railroad, 116 N.C. 940, this very charter of the defendant company was elaborately considered, and in an able opinion by Mr. Justice Avery, concurred in by the entire Court, it was held that no lease made by virtue of the above-cited words — there being no clause of exemption granted to the lessor — would exempt the defendant from liability for the wrongful acts, defaults or negligence of its lessee, and hence that the lessor company was liable for injuries sustained from the negligence of its lessee by a section hand employed by such lessee.
This decision was rendered by this Court at February Term, 1895, and the lessor and lessee, both aware of the construction placed by the Court upon a contract by lessor to *Page 358 
"farm out its right of transportation" on 16th August following executed the lease under which the lessee is now operating the defendant's road. Both parties had that decision in view, and provided for the liability of the defendant for all the acts and defaults of its lessee by a stipulation in said lease (which lease is filed as a part of the record in this case) for a deposit of "not less than $175,000 in cash, or its equivalent, to be applied" to the performance of the stipulations in the contract to be performed by the lessee, and among them "to any judgment or judgments recovered in any Court of the State or of the United States when finally adjudicated, for any tort, wrong, injury, negligence, default or contract,done, made or permitted by the parties of the second part, its successors, assigns, employees, agents or servants for which the party of the first part shall be adjudged liable, whether the party of the first part is sued jointly with or separately from the party of the second part," and further provides to what agents of the lessee notices of such suits shall be given by the lessor when sued singly, and for the renewal and maintenance of said sum whenever diminished by such application of any part thereof.
The lease was made subsequent to the decision of the Logan case. Both lessor and lessee knew of the continuing liability of lessor under any lease authorized by the words "farm out," as construed by this Court, and stipulated, in view of such liability, a deposit being put up, to be maintained at a fixed sum to guarantee the lessor, the defendant herein. If the lease is valid because made subsequent to the decision of a divided Court in State v. Railroad, 72 N.C. 634, it does not lie in the mouth of the lessor to contend that it does not remain liable for all acts of its lessee in the operation of its road under a lease made subsequent to the decision of a unanimous Court in Logan v. Railroad, 116 N.C. 940, especially when it has stipulated against loss therefrom by exacting *Page 359 
a deposit from its lessee. And, in fact, the lessor has not complained. This objection has several times been raised in this Court, but always by counsel of the lessee, and ruled upon again and again, always in conformity to the precedents in Aycock's case, 89 N.C. 321, and Logan's case, supra. The defendant has never averred any loss, detriment or probable damage by reason of its being held liable for the acts of its lessee as its agent in the operation of the road. The lessee, the Southern Railway Company, is the only railroad company operating in this State which claims to be a foreign corporation, as we know from the statutes incorporating all others, except possibly one other lessee. It has been stated by its counsel in their place here that the Southern Railway Company has "domesticated" — but it is unnecessary to discuss here the point which has been decided in Debnam v.Tel. Co., 126 N.C. 831. Whether the lessee be a foreign corporation or not, the lessor when it entered into this lease, knew that by the terms of its charter, as construed by this Court, it would remain liable, notwithstanding such lease, for the acts of its lessee. Logan v. Railroad,supra, has been cited and approved on this point, Tillett v. Railroad, 118 N.C. at page 1043; James v. Railroad, 121 N.C. 528; Norton v. Railroad, 122 N.C. at page 937; Benton v. Railroad, Ibid, at page 1009; Pierce v.Railroad, 124 N.C. at page 93; Perry v. Railroad, 128 N.C. at page 473, and in Raleigh v. Railroad, at this term, in most of which cases this defendant was a party.
Had Logan's case not been decided prior to the lease made by the lessor, and stipulations in view thereof made in the lease, and viewed as an original question, it is sustained by the overwhelming weight of authority and upon reason. In 20 Am. and Eng. R. R. Cases Annotated, at page 847, the rule is laid down: "A railroad company which has leased its road, cars and engines, and allows the lessee company to *Page 360 
operate the same, is liable to third persons or the public for the carelessness and negligence of the lessee, and for defects in the construction and maintenance of the road and its equipments, unless there is a statutory provision to the contrary" (and there is none in this case). For this proposition it there cites thirty-six cases from the United States Courts and the Courts of the different States, and from England, and it is not necessary to repeat them here. In Railroad v. Brown, 84 U.S. at page 450, the Court says: "It is the accepted doctrine in this country that a railroad corporation can not escape the performance of any duty or obligation imposed by its charter or the general laws of the State by a voluntary surrender of its road into the hands of lessees. The operation of the road by the lessees does not change the relations of the original company to the public," and cites with approval 1 Redf. Railways, to same effect. Also to the same purport are 1 Beach Pr. Corp., sec. 366; 1 Spelling Pr. Corp., 135, and several other authorities cited in Logan v.Railroad, 116 N.C. at pages 946 et seq.
In Harmon v. Railroad, 28 S.C. 401, the words of the charter construed were almost identical with those in defendant's charter, and it was held that a lease made thereunder did not relieve the lessor from liability for the acts of its lessee. In Bank v. Railroad, 25 S.C. 216, the same ruling is made as to non-delivery of freight, the Court saying: "We are unable to appreciate the distinction attempted to be drawn by appellant's counsel between the liability of a railroad company which has leased its line to another, to actions ex delicto and ex contractu. The foundation for such liability is that such company, by accepting its charter, assumed obligations to the community from which it can not absolve itself by leasing its road to another company; and as such carrier is not only under an obligation to carry passengers safely, but also to deliver goods entrusted to it for transportation *Page 361 
we think the same principle which would make the lessor liable in the one case would make it liable in the other."
In Balsley v. Railroad, 119 Ill. 68, it is said that the liability of the lessor for the acts of the lessee is not merely because the lessee is the agent of the lessor, but further because the lessor in consideration of the grant of its charter undertook the performance of duties and obligations, and it is against public policy for it to be relieved therefrom without the express consent of the Legislature.
In 20 Am. and Eng. R. Cases, at page 848, it is said:
"A railroad company which leases its road pursuant to a statutory authority, which does not contain any provision releasing it from the performance of its duties to the public, is liable for personal injuries sustained through negligence in the operation of the road by the lessee. To the same purport are:
United States. — Thomas v. Railroad, 101 U.S. 83; R. Co. v.Brown, 84 U.S. 445; R. Co. v. Barron, 72 U.S. 90; R. Co. v. Winans,58 U.S. 39.
Georgia. — Singleton v. Railroad, 70 Ga. 464, 48 Am. Rep., 574;Railroad v. Moyes, 49 Ga. 355.
Illinois. — Railroad v. Dunbar, 20 Ill. 623; R. Co. v. Lane,83 Ill. 448; Railroad v. Campbell, 86 Ill. 443; Railroad v. Peyton,106 Ill. 534; Balsley v. Railroad, 119 Ill. 68, 59 Am. Rep., 785; R. Co. v.Meech, 163 Ill. 305.
Maine. — Whitney v. Railroad, 44 Me. 362; Stearns v. R. Co.,46 Me. 95; Nugent v. R. Co., 80 Me. 62.
Massachusetts. — Quested v. R. Co., 127 Mass. 204; Braslin v. R.Co., 145 Mass. 64 (where the contract of lease is much as in this case).
Missouri. — Brown v. R. Co., 27 Mo., App., 394.
Nebraska. — Charlotte v. R. Co., 26 Neb. 159.
New York. — Abbott v. R. Co., 80 N.Y. 27, 36 Am. Rep., 572. *Page 362 
 North Carolina. — Aycock v. Railroad, (1883) 89 N.C. 321; Loganv. R. Co., 116 N.C. 940; Tillett v. Railroad, 118 N.C. 1043; James v.R. Co., 121 N.C. 528; Norton v. R. Co., 122 N.C. 937; Benton v. R. Co.,Ibid., 1009; Pierce v. R. Co., 124 N.C. 93; Perry v. R. Co., 128 N.C. 473;Raleigh v. R. Co., at this term.
Oregon. — Lakin v. R. Co., 13 Ore., 436, 57 Am. Rep., 25.
South Carolina. — Harmon v. R. Co., 28 S.C. 401; Hart v. R. Co.,33 S.C. 427; Bank v. R. Co., 25 S.C. 216.
Texas. — Railroad v. Underwood, 67 Tex. 589; Railroad v. Morris,Ibid, 692; Railroad v. Morris, 68 Tex. 49.
Washington. — Cogswell v. R. Co., 5 Wn. 46.
In 71 Am. Dec., 295, it is said by Judge Freeman in his notes: "It is a well-settled doctrine that, in the absence of legislative authority permitting a lease and exempting the company from liability, it is responsible for the torts of the lessee" — citing many cases.
In Nelson v. R. Co., 26 Vt. 717, 62 Am. Dec., 614, Chief Justice Redfield says: "As to the liability of the defendants for the acts of their lessees, who were running the defendants' road under a long lease, we think there can be no doubt. Unless we can hold the defendants thus liable, they might put their road into the hands or corporations or individuals of no responsibility."
If a railroad corporation could relieve itself of liability by leasing, it would follow that leases could be made to another corporation with no tangible assets — as, indeed, the lessee in this case, if a foreign corporation, has none in this State — leaving the travellers and shippers over its line, the general public and its employees alike, without recourse on the property of the corporation which was chartered to operate the road, and which is left in receipt of the rent, which might readily be made high enough to cover the profits. Thus *Page 363 
the company would, by a device of a lease, receive the profits without incurring the liabilities of its business.
In many cases it has been held that a bona fide mortgage can not have that effect. Acker v. Railroad, 84 Va. 648; Naglee v. R. Co., 83 Va. 707;Railroad v. Burnett, 123 N.C. 210, and the rights of mortgagees for money presumably applied to debts are stronger than those of lessors.
The question here is not the liability of lessees, which also exists, but of the right of the lessor to put off the liabilities incident to the franchise given it, while continuing to enjoy its profits through the medium of a lease. This the corporation owning the property can not do.
No Error.