EMPIRE TRUST CO. et al. v. EGYPT RY. CO. et al.

(Circuit Court, E. D. North Carolina.   October 3, 1910.)

(No. 307.)

1. EQUITY (§ 412*)—REPORT OF MASTER—RECOMMITTAL.

It is not usual for the court to recommit a report to the master who made it to take further testimony and revise his conclusions after full opportunity has been given parties to introduce testimony, and especially where the party moving has filed no exceptions to the report.

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 924–926;  Dec. Dig. § 412.*]

2. LIENS (§ 1*)—NATURE AND ESSENTIALS—NECESSITY OF PROVING DEBT.

It is essential to the establishment of a lien on property that a debt from the owner of the property be proved.

[Ed. Note.—For other cases, see Liens, Cent. Dig. § 1;  Dec. Dig. § 1.*]

3. RAILROADS (§ 131*)—LEASES—POWER TO MAKE LEASE.

The charter of a railroad company in North Carolina which leased its road authorized it to lease the same to other companies, "provided the road or line of such companies shall be directly connected with this company." The charter of the lessee company, whose road was intended to be an extension of that of the lessor, authorized it to lease the road of another company, "provided the road or line of the two companies shall be connected directly or indirectly by means of intermediate roads." At the time the lease was made, the lessee had located its line from a connection with the road of the lessor for a distance of 15 miles, a considerable portion of which had been graded. It had also laid 1½ miles of track on such grade from a point on another road which made a physical connection between its track and the road of the lessor. The portion between such piece of track and the lessor's road had not been laid because of the noncompletion of a bridge. *Held* that, giving the charters a fair construction, the conditions met their requirements, and the lease was authorized and valid.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 404–406;  Dec. Dig. § 131.*]

4. RAILROADS (§ 134*)—LEASES—LIABILITIES OF LESSOR—CONTRACT DEBTS OF LESSEE.

The doctrine established by decision by the Supreme Court of North Carolina that a railroad company cannot divest itself of its charter duties by a lease of its road, and even that a company leasing its road is liable for the negligence of its lessee in the operation of the road resulting in injury to an employé, does not go to the extent of making a railroad company which has made a valid lease of its road under statutory authority liable contractually for labor performed or material furnished the lessee company in the operation or maintenance of the property, and such liability does not exist under the rule of the federal courts.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 423–433;  Dec. Dig. § 134.*]

In Equity.  Suit by the Empire Trust Company and others against the Egypt Railway Company and others.  On exceptions to master's report, and motion to recommit.  Motion overruled, and exceptions sustained.

John W. Hinsdale and R. H. Hayes, for complainants.
D. E. McIver and Aycock & Winston, for claimants.

CONNOR, District Judge. This was an original bill in equity filed by complainant Empire Trust Company for the purpose of foreclosing and bringing to sale the property, pursuant to the trusts declared in a certain deed executed by said company to complainant, bearing date July 21, 1890, and duly recorded, for the purpose of securing the payment of certain bonds therein set forth. Pursuant to the prayer in the bill, a consent order was made directing the sale of the property for the sum of $25,000. This amount was insufficient to pay the bonds secured in the deed. Twenty thousand dollars was credited on said bonds and $5,000 paid into the registry of the court to await the determination of certain claims made by persons asserting an indebtedness due them from the Raleigh & Western Railway Company and the defendant Egypt Railway Company for work and labor done and materials furnished, having a right of priority over the bonded indebtedness, for which they filed complaints herein. For the purpose of having said claims determined, notice was issued to the claimants to appear before the standing master at a time and place to be fixed by him and file their claims. Pursuant to this order, Hon. W. A. Montgomery, the standing master, heard the several claimants, taking testimony in regard to their several claims and their right to priority over the bondholders. In his report filed November 24, 1909, he sent the testimony taken by him with his conclusions of fact and of law. He found the following facts bearing upon all of the claims filed before him, except that of A. L. Leger:

"That all of the claims asserted and filed in this cause against the Egypt Railway Company, except that of A. L. Leger, hereinafter to be referred to, were contracted with the Raleigh & Western Railway Company, lessee of the Egypt Railway Company, and while the Raleigh & Western Railway Company was operating the line of railroad (about eight miles in length) belonging to the Egypt Railway Company in Lee county, N. C., and extending from Colon, near Osgood, on the Seaboard Air Line Railroad, to Cumnock, near Egypt depot. That on the 3d day of April, 1893, the Egypt Railway Company leased its railroad property to the Raleigh & Western Railway Company, and it was operated by the latter company until about the latter part of June, 1903. That at the time the contracts were made and the services rendered by the said claimants with and for the Raleigh & Western Railway Company that company was without property and unable to meet its obligations."

On March 11, 1908, Samuel A. Henzey was appointed temporary, and on April 6, 1909, permanent, receiver by this court. The master found the specific facts in regard to each claim including the date of material furnished and labor performed, amount due, etc. Consideration of exceptions to these findings will be postponed until the pivotal question as to the liability of the Egypt Railway Company is disposed of.

The master found as a conclusion of law:

"That a railway company in North Carolina by a lease of its property to another cannot exempt or release itself from liabilities incurred by its lessee for the maintenance, equipment, and operation of the railroad; that the Egypt Railway Company is indebted to the following named creditors, respectively, * * * for indebtedness incurred by its lessee, the Raleigh & Western Railway Company, for labor performed and material furnished, as set forth, etc.; that the respective amounts found to be due claimants

constitute indebtedness superior to the lien of the mortgage creditors. Revisal N. C. 1905, § 1131."

Complainant on December 15, 1909, filed a number of exceptions to certain of the findings of fact by the standing master and to all of his conclusions of law. Claimants did not file any exceptions to the report. The hearing upon the report and exceptions was by consent continued from time to time and heard upon briefs filed by counsel for the respective parties and oral argument; complainant insisting on its exceptions to certain conclusions of fact and the conclusions of law, claimants insisting upon a confirmation of the report. Counsel for claimants at some time during the pendency of the motion for confirmation, the exact date of which is not certain, notified the judge by letter that they would ask for a recommittal of the report.

On May 30, 1910, notice was given counsel for complainants that on Thursday, June 2, 1910, claimants "would move the court to remand the cause to the master for the taking of further evidence with a view to showing the liability of both the Egypt Railway Company and the Raleigh & Western Railway Company to G. W. Riggsbee and others." Affidavits and counter affidavits were filed in support and against said motion.

Claimant's affidavits indicate a purpose to show before the master (1) that the conditions upon which the power to lease by the Egypt Railway Company to the Raleigh & Western Company prescribed by their charter and the public statutes did not exist at the date of the lease, if one was made; (2) that no valid lease was made, etc. No exception has been filed, nor any request made to file one by claimant to the master's finding of fact, that the lease was made, or that the Raleigh & Western Railway Company was operating the railroad, or that the claimants contracted with said company for the labor performed and material furnished. It is not suggested that these findings are not supported by the testimony; on the contrary, the testimony upon which they are based came from the claimants. It is not usual for the court to recommit a report to the master to take further testimony and revise his conclusions, after full opportunity has been given parties to introduce testimony. This is especially true where the party moving has filed no exceptions to the report. In so far as the affidavits tend to show that the lease found by the master to have been executed by the Egypt Railway Company is not authorized by its charter, or the general law of the state, the charters of both roads being in evidence, they will be considered by the court, but for no other purpose. The motion to recommit is denied. It is elementary that before the claimants can successfully assert a lien, or right to be paid from the proceeds of the sale of the property of the Egypt Railway Company, they must establish a valid indebtedness, based upon a contract, either express or implied. Liens or priorities created either by statute, or based upon equitable principles, are given to secure, or enable, the lienor to enforce the payment of a debt, unless enlarged by express language, as in section 1131, Revisal N. C. 1905, to claims based upon torts. There being no element of tort in

claimants' demands, their right to recover is confined to a liability growing out of and founded upon a contract. This principle is well stated by the court in Bailey v. Rutjes, 86 N. C. 517. "Before there can be a lien on property, there must be a debt due from the owner of the property; a lien being but an incident to the debt." Boone v. Chatfield, 118 N. C. 916, 24 S. E. 745. The primary question, therefore, is whether the Egypt Railway Company is indebted to claimants. It is not alleged that any officer or agent of this corporation employed claimants or purchased any material from them. It is conceded that they contracted with the Raleigh & Western Company. Ordinarily, the lessor is not liable to persons employed by the lessee for labor performed or material furnished in the maintenance and operation of the leased property. It is insisted that, notwithstanding this, the Egypt Railway Company, lessor, is liable to claimants for that (1) the lease is invalid, being made without authority of law; (2) that, being a public service corporation, the Egypt Railway Company continues liable, notwithstanding a valid lease for all claims accruing against its lessee, in the operation and maintenance of the property. It is well settled by the decisions of the courts of this state and the Supreme Court of the United States that "a railroad company cannot, without legislative authority, lease its road to another company, even with the consent of all its stockholders, and, to constitute a valid lease, the lessee must have authority to take as well as the lessor to execute the lease." 33 Cyc. 391; Thomas v. Railroad Co., 101 U. S. 71, 25 L. Ed. 950; Logan v. Railroad, 116 N. C. 940. 21 S. E. 959.

The charter of the Egypt Railway Company authorizes it to lease its road to other companies, "provided the road or line of such companies shall be directly connected with this company"; and the charter of the Raleigh & Western Railway Company (Priv. Laws N. C. 1893, p. 36) authorizes that road to lease, "provided the road or line of the two companies shall be connected directly or indirectly by means of intermediate roads." These statutes were put in evidence.

The master finds that the lease was executed April 3, 1893. This was subsequent to the rising of the Legislature of that year. The only question presented in regard to the validity of the lease is whether at the time it was executed the "roads or lines" of the two companies connected. It appears from the affidavit of Mr. Henzey:

"That at the time the Raleigh & Western Railway Company leased the road and property of the Egypt Railway Company it had located its line from the track of the Egypt Railway Company in a northwestern direction to Harper's Crossroads, a distance of 15 miles, and that it had actually graded a very considerable portion of the said 15 miles before the execution of said lease. That before this time the Raleigh & Western Railway Company had laid about 1½ miles of rails from a point on the C. F. & Y. V. Railroad, near Gulf, in a northwestern direction towards Harper's Crossroads, making a physical connection with the Egypt Railway Company by means of the intermediate track of the C. F. & Y. V. Railroad between Cunnock and Gulf. That there was thus an actual physical connection between the said 1½ miles track of the Raleigh & Western Railway and the track of the Egypt Railway, which latter track connected physically with the C. F. & Y. V. track."

It seems·that the track was first laid in this way because the bridge over Deep river, running between Cumnock and Gulf, had not been built. The affidavit of Mr. Redding filed by claimants, although not so full as Mr. Henzey's, does not contradict it in any essential respect. While it is impossible to find an authority directly in point, it would seem that, giving to the language of the two charters a fair interpretation, the conditions existing at the time of the lease meet the requirement.

It will be observed that the words used are "road or line," and in the Raleigh & Western charter "direct or indirect." It is evident that the lines of the two roads could never have been parallel. It also appears that the Raleigh & Western Railway was expected and intended to be an extension of the Egypt Railway. This is apparent from the charter of the latter. It has been ·held that, where the statute empowering a railroad company to lease its property to another company limits it to one forming a connecting or continuous line, the connection may be had by·means of an intervening road which one of the contracting parties has the right to operate or use. Black v. Del. & Canal Company, 22 N. J. Eq. 402; Atchison, etc., Railway Co. v. Fletcher, 35 Kan. 236, 10 Pac. 596; 33 Cyc. 393. The value of these cases as authority is lessened by the fact that it does not appear here that either of the companies had such right over the C. F. & Y. V. track.

In Hancock v. Louisville Railroad Co., 145 U. S. 409, 12 Sup. Ct. 969, 36 L. Ed. 755, construing a charter empowering a lease so as to form a continuous line, Mr. Justice Brewer says:

"It is enough that by the lease the connected roads form a continuous line, and it is not essential that the leased line be an extension from either terminus of the lessee's road. The evil which was intended to be guarded against by this limitation was the placing of parallel ·and competing roads under one management, and the control of one company of the general railroad affairs of the state through the leasing of roads remote from its own, and with which it has no physical and direct connection."

It would seem adopting· this rule of interpretation that the lease is valid. The master rested his conclusion of law upon the validity of the lease, being of the opinion that the claimants' right to hold the Egypt Railway Company liable was supported by the numerous decisions of the Supreme Court of North Carolina and of the United States that, notwithstanding the execution of a valid lease by a railroad company of its property, it continued to be liable "to respond in damages for defaults" of its lessee.

It is important to a proper decision of the question presented upon this record to. ascertain definitely just what the Supreme Court of North Carolina has decided in regard to the character and extent of the liability of a lessor railroad company for the "wrongs and defaults" of its lessee in the maintenance and operation of the leased property and the principle upon which the decisions are founded. It is insisted by claimants that the decisions in this state fixing the liability are so uniform as to enter into the terms· of every lease, and this view is strongly stated by the present Chief Justice in Harden v. Railroad, 129 N. C. 354, 40 S. E. 184, 55 L. R. A. 784, 85 Am.

St. Rep. 747. Complainant on the other hand insists that the question is one of general law in regard to which the federal courts will be governed by the "reason of the thing" upon principle, and not regard the decisions of the state court as binding.

Without undertaking to decide this delicate question, it will be well to examine the North Carolina decisions with care to ascertain whether they have either directly or by necessary deduction decided the question, as contended by counsel for claimants. The first case found in the North Carolina reports is Aycock v. Railroad, 89 N. C. 321. It is there held that "the lessor remains liable for the mismanagement of its trains" by the lessee, negligently setting fire to woods of an adjacent landowner. In Logan v. Railroad, 116 N. C. 940, 21 S. E. 959, the action was for damages sustained by an employé, a section master, for injuries sustained by the negligent operation of the train by the employés of the lessee; the lease being set out in the complaint. Defendant demurred for that the lessor was not liable for the negligence of the lessee, and that the injury was inflicted by the negligence of the servants of the lessee. The question as to the relation which plaintiff bore to the lessee or employé of the lessee was not presented or argued. Mr. Justice Avery, writing for the court, held that:

"A part of the original obligation of the lessor to the public was to furnish such trains, or other appliances, as would be necessary to provide for the safety of the passengers as well as the employés who should travel on its cars, and we see no reason why that duty should not exist, like that to look after its road bed, till the Legislature for the sovereign declares the lessor absolved from it. Resting our ruling upon the broader ground of the obligation to the public, which is inseparable from the grant and the exercise of the corporate privileges, except by the express consent of the Legislature, we see no force in the view of the subject which seeks to limit the scope of the lessor's duty to such as pertain to land."

It is evident from the authorities cited and the course of reasoning of the learned justice that he placed his conclusion upon the language quoted by him from Spelling on Priv. Corp. § 135:

"The lessor company remains liable for the performance of public duties to private parties for the nondelivery of goods received by it for delivery and for all acts done by the lessee in the operation of the road, notwithstanding the lease is authorized by the lessor's charter."

Tillett's Case, 116 N. C. 937, 21 S. E. 698, was for injury to passenger. In Harden v. Railroad, 129 N. C. 354, 40 S. E. 184, 55 L. R. A. 784, 85 Am. St. Rep. 747, the action was by a brakeman for injuries sustained by reason of a defective coupler. The defendant attacked the decision of the Logan Case and others, decided at the same and subsequent terms of the court. Mr. Justice Clark reviewed the authorities, citing Railroad v. Brown, 84 U. S. 445, 21 L. Ed. 675; Thomas's Case, 101 U. S. 83, 25 L. Ed. 950. In Perry v. Railroad, 129 N. C. 333, 40 S. E. 191, Mr. Justice Douglas says:

"If the exception is intended to raise the question of liability of the lessor, we can only repeat what we have said before. That a railroad company leasing its road is liable for the negligence of its lessee in the operation of the road is well settled in this state."

While an action for injury sustained by an employé by reason of the negligence of the employer is founded upon a breach of contractual duty, it is also a tort, or, as sometimes said, tort quasi ex contractu, as for failure to deliver goods received for shipment, or injury to passenger for hire, etc. The industry of counsel has failed to discover any case in which the principle has been applied to an action against the lessor for wages due, or the price of material furnished the lessee in the operation of the leased property. Several of the Circuit Courts and of the courts of other states have held that the principle upon which Thomas' Case and Brown's Case, supra, was decided did not apply to an action for damages for injuries sustained by an employé.

In Axline v. Toledo, etc., Railroad (C. C.) 138 Fed. 169, the action was for an injury sustained by an employé of the lessee road. The roads were sued jointly. The statute of Ohio provided that, notwithstanding a lease by a railroad company of its property, the lessor should remain liable as if it operated the road itself to an action accruing to any person "for any negligence or default growing out of the operation and maintenance of any railroad, or in any wise connected therewith." The court said:

"This law has relation to the duties of the railroad company as a common carrier, and, in that respect, is declaratory of the common law, and is not applicable to the plaintiff's case, which is founded upon the contract of service between the plaintiff and the Pennsylvania Company, and not upon any duty which the Pennsylvania Company as a common carrier owed to the company."

The learned judge noticed the distinction between that case and Central Ohio Company v. Mahoney, 114 Fed. 732, 52 C. C. A. 364, in which the lessor company was held liable for an injury sustained by a passenger by the negligence of the lessee, saying:

"The plaintiff was not being carried as a passenger over the railroad, but was a servant in the employ of the Pennsylvania Company, and the duty which that company owed him arose out of the contract between them, and was not imposed by law upon grounds of public policy."

In Williard v. Spartanburg Railroad (C. C.) 124 Fed. 796, the action was brought by an employé against both lessor and lessee for injuries sustained by the negligence of the lessee company in the course of his employment. Circuit Judge Simonton, after citing Thomas' Case, supra, and other cases, and stating the principle announced therein, said:

"But the present action is brought not by one of the public injured by the operation of the lessee railroad, but by an employé of the lessee injured in the performance of his duty through the negligence of the employé of the lessee and not from any structural defects in the road. The action is based on a tort quasi ex contractu growing out of the contract of service and a breach of duty under that contract. There is no such contractual relation between the employé of the lessee with the lessor, and consequently no breach of duty upon which an action could arise—[citing 2 Elliott on Railroads, § 472, and East Line Ry. v. Culberson, 72 Tex. 375, 10 S. W. 706, 3 L. R. A. 567, 13 Am. St. Rep. 807]."

Judge Simonton says:

"The reason of the rule which holds the lessor liable fails in a case of an employé of the lessee, and we think that to follow it in a case like this would be to give it an arbitrary, and not a reasonable, application."

In Hukill v. Maysville & B. S. R. Co. (C. C.) 72 Fed. 745, heard before Circuit Judges Taft and Lurton, the action was for damages for injuries sustained by an employé of the lessee road. Both roads were sued. Judge Taft says:

"The lessor company, by virtue of its charter, assumed the obligation to perform certain duties for the public in carrying freight and passengers and in observing statutory precautions for the protection of the public from danger in the operation of its railroad. When it unlawfully shifts to another company the burden of the discharge of these duties to the public, any loss resulting to any member of the public from a failure by its lessee to discharge them may be made the basis for a claim for damages against the lessor company. The duty owing from the lessee company to its employés is, however, one which arises wholly from contract, and is not imposed by the charter of incorporation. The lessor company was not obliged to employ as a servant any particular members of the public. A person entering the service of the lessee company therefore acquired no right against the lessee except by virtue of the terms of employment. Such employé came into no privity of contract with the lessor company. No case has been cited to us in which it is held that the servant of the lessee company operating under a void lease can recover against the lessor company for injuries sustained by the negligence of the lessee company in the operation of the road. The only cases where liability in tort is enforced against the lessor company are those where the person injured is a member of the public, with the right to rely upon the discharge of the public duties assumed by the lessor company in the operation of the road. Such persons are shippers, who have a common-law right to demand of the common carrier that he shall carry their goods safely, passengers, who have a common-law right to demand of the common carrier that they shall be carried safely to their destination, and travelers upon the highway, who have a statutory and common-law right to such a reasonable and careful operation of the road as shall not unduly injure them in the pursuit of their lawful rights."

In Culberson's Case, supra, the question of the liability of a railroad making an unauthorized lease for injury sustained by an employé of the lessee in the operation of the road was carefully considered, and upon a rehearing Gaines, J., reviews the authorities, including Aycock's Case, supra. He says:

"We have found only one case in which a servant of the company operating a railroad under a license of the owner was permitted to recover of the latter for the negligence of the former's servant."

He cited Railroad Co. v. Mayes, 49 Ga. 355, 15 Am. Rep. 678, which he says "presented peculiar complications, and could have been rested upon other grounds." He also says that "the immediate question before us was not discussed in the opinion." In that case the court treated the action "as for tort." He draws the distinction upon which the decisions in the federal and other state courts go, saying:

"It does not do to say that the lessee would be the agent of the lessor, as applied to this case. This would be a mere fiction, not based upon any sound rule of law. The lessee, under an unauthorized lease, may be deemed the agent of the lessor, so far as the latter's duties to the public are concerned. * * * But the duty which is owed to an employé of the lessee

is a special one, and not a duty owed to him in common with the general public."

In Nugent v. Boston, etc., Railroad Co., 80 Me. 62, 12 Atl. 797, 6 Am. St. Rep. 151, the lessor was held liable as for a tort to the employé of the lessee for an injury sustained by reason of the negligent construction by the lessor of a station house. B. & O. Railroad v. Paul, 143 Ind. 23, 40 N. E. 519, 28 L. R. A. 216, in which Culberson's Case is cited and followed. Banks v. Georgia Railroad, 112 Ga. 655, 37 S. E. 992; Swice v. Mayesville Railroad, 116 Ky. 253, 75 S. W. 278; Buckner v. Railroad, 72 Miss. 873, 18 South. 449; Railroad v. Washington, 86 Va. 629, 10 S. E. 927, 7 L. R. A. 344. These authorities sustain the conclusion reached by the editor of Cyc. (volume 33, p. 707) that the liability of the lessor railroad to employés of the lessee for negligence is an open question. These authorities are not cited for the purpose of drawing into question the correctness of the North Carolina decisions, but to show that they do not decide, nor is there any necessary deduction to be drawn from them, that the lessor company is liable contractually for labor performed or material furnished the lessee road in the operation or maintenance of the property. The question is not presented in any of the cases. They are all rested upon the nonassignable duty to the public—and this general doctrine is based upon a sound public policy recognized and enforced by all of the courts, state and federal. The only divergence of opinion between them and the North Carolina court is in the application of the principle to causes of action accruing to employés of the lessee by reason of its negligence.

It will be noticed that in Logan's Case, supra, Mr. Justice Avery states that:

"A part of the original obligation of the lessor to the public was to furnish such trains, or other appliances as would be necessary to provide for the safety of the passengers as well as the employés," etc.

Mr. Justice Douglas, in Perry's Case, supra, criticises counsel for attempting to reopen a question which he declares to be "well settled in this state," and this, he says, is "that a railroad company leasing its road is liable for the negligence of its lessee in the operation of the road." Nothing is found in the reports modifying or enlarging this language. It will be observed that in the decisions of the Supreme Court of North Carolina a tendency is shown to treat actions for injuries to employés by reason of negligence in failing to furnish "safe ways, means, and appliances" as torts or torts quasi ex contractu, rather than breaches of contracts. This "mental attitude" upon the subject is consistent with the humane view of the rights of employés and duties of employers, and in harmony with the best enlightened public sentiment, as expressed in recent state and national legislation. The North Carolina decisions are in harmony with this attitude. The federal courts and many of the state courts have adhered to the more scientific view that confines the rights of employés to those growing strictly out of the contractual relation.

However this may be, the conclusion is reached that the question presented here is in this state open with an irresistible inference that

in the federal court the principle of imputed liability of the lessor would not be extended to claims for wages due employés, or the price of material furnished the lessee. However much the judge may sympathize with the claimants in this case, and desire to enforce against the complainant the principle that the "laborer is worthy of his hire," he cannot do so without introducing into the law an innovation fixing liability upon persons who were not parties to the contract. If a sound public policy demands such a change in the law, it must find expression through the Legislature, and not made by the judges. With a strong desire to secure to the claimants the amounts due them for wages and materials, I cannot change the terms of the contract made by them with the Raleigh & Western Railway Company and bring into it the Egypt Railway Company for the purpose of fixing a liability upon it, which it never assumed. In several of the cases cited the lease was made without authority of law. It is held in such cases that for the discharge of its public duty the company owning the road is liable to the public for the negligence of the company operating it, upon the theory that the latter is the agent of the former. If the claimants' contention had been sustained that the lease was invalid, it is not easy to see how the liability of the Egypt Railway could have been extended, upon this principle, to the demand of claimants for labor and material.

This conclusion renders it unnecessary to pass upon a number of exceptions to the master's findings of fact. If the Egypt Railway Company is not liable for the amounts due the claimants, of course, the question of priority, as between them and the bondholders, does not arise. The master rested his conclusion of law upon section 1131. He inadvertently overlooked the omission of the Legislature to include claims other than for "labor performed or torts committed" in the exemption from the liens of mortgages or trust deeds. The fact that some of the claimants obtained judgments against the Egypt Railway Company cannot affect the rights of complainant trustee or the receiver. The exception to the master's conclusion of law must be sustained. A decree will be drawn accordingly.