JESSIE E. BUTLER, Administratrix, Appellee, v.
CHICAGO, BURLINGTON & QUINCY RAILROAD
COMPANY, Appellant.

1. **Railroads:** CUSTOM: COMPETENCY OF WITNESS. An employee of a
railroad company, whose location and duties for a period of two
years enabled him to know the facts, *held*, to be a competent witness
to the fact that "it was always the custom of the clinker men to help
the hostlers" in moving locomotive tanks.

2. **Evidence:** CROSS-EXAMINATION. An answer to a question on
cross-examination not relating to anything the witness has testified
to in chief, may properly be stricken out on motion.

3. ———: OF ULTIMATE FACT: ADMISSIBILITY. Although one of the
material allegations of the petition was that a certain engineer was
unskilled, *held*, that such being an ultimate fact, direct testimony,
offered by the defendant, that he was skilled, was properly excluded.

4. **Agency:** EVIDENCE OF: DECLARATIONS OF AGENT. The fact of
agency can not be shown by the statements and representations of
the alleged agent.

5. **Evidence:** MEMORANDUMS: ERROR WITHOUT PREJUDICE. Where
a locomotive engineer testified that he had no recollection of the time
of the arrival of a certain train at a certain place, independent of a
memorandum; that he made the memorandum at the time, and that
it was correct; *held*, that whether the memorandum was admissible
in evidence or not, the witness having been permitted to testify from
the memorandum, fully, as to all matters therein referred to, its exclu-
sion was error without prejudice.

6. **Master and Servant:** RAILROADS: INJURY TO "CLINKER MAN:"
NEGLIGENCE OF FELLOW SERVANTS: LIABILITY. A "clinker man,"
whose business is to remove ashes, cinders and fire from locomotives,
to supply them with water and sand, and to aid in shifting engine
tanks, and in the performance of whose duties it is necessary for the
engine to be switched from place to place, and customary for him to
ride thereon, is engaged in work connected with the use and opera-
tion of a railway, within the meaning of section 1307 of the Code,
making a railway company liable for injuries sustained by an
employee through the negligence of his fellow servants.

7. ———: ———: WORK OUT OF LINE OF EMPLOYMENT. Where a "clinker man" of the defendant was injured while aiding in shifting engine tanks, a work to which no other employee was assigned, and which the "clinker man" had done for years, with the knowledge and under the direction of other employees of the defendant, held, that the defendant could not escape liability on the ground that he was injured while out of the line of his duty, and acting as a mere volunteer.

8. ———: ———: NEGLIGENCE: QUESTION FOR JURY. Where the evidence showed that the defendant's "clinker man" was killed while in the act of coupling two locomotive tanks together, and that, to do so, he was compelled to get under the ends of the tanks, as he did, and that, while in this position, the engine attached to one of the tanks was so moved as to kill him, held, that the questions as to the company's negligence, and that of the contributory negligence of deceased, were properly submitted to the jury.

*Appeal from Union District Court.*—HON. H. M. TOWNER, Judge.

TUESDAY, JANUARY 24, 1893.

ACTION by the plaintiff, as administratrix of John Butler, deceased, for damages arising from the killing of said Butler by the defendant. There was a trial to a jury, resulting in a verdict and judgment for the plaintiff. The defendant appeals.—*Affirmed.*

*McDill & Sullivan,* for appellant.

*Jas. G. Buel* and *Thomas L. Maxwell,* for appellee.

KINNE, J.—The plaintiff, in substance, charges that on March 2, 1889, John Butler, in the discharge of his duty as an employee of the defendant, went between and under certain locomotive tanks of the defendant, to couple them, preparatory to their being moved; that there was then attached to one of said tanks a locomotive, in charge of an employee of the defendant who was unskilled, careless, and negligent, and that he carelessly and negligently moved, shoved, jammed, handled, and ran said tanks upon and over

said Butler, thereby causing his death; that said Butler was without fault or negligence on his part. The defendant denies every allegation in the plaintiff's petition; denies that the deceased was at the time of his death working in the employ of the defendant; denies that at the time and place alleged in the petition it placed one of its locomotives in the hands of an unskilled, careless, and negligent engineer; denies that the locomotive and tanks were unskillfully, carelessly, and negligently moved, shoved, jammed, handled, and run upon deceased; alleges that said work so far as it was authorized and done by employees of the defendant, was done with skill and care, and without any negligence; that the deceased, by his own gross negligence and want of care, contributed to and caused his death, and the same was in no way due to any neglect or want of care on the part of the defendant; that it was no part of the deceased's duty to couple locomotive tanks.

It appears that the deceased had for several years been in the employ of the defendant company; that for the two years prior to his death he had been what was called a "clinker man." He was at the time of his death thirty-seven years old. He was a small man, and lame in one hip. His habits were good. He was very industrious, and his pay amounted to about forty-five or forty-six dollars per month. His ordinary duties, as clinker man, appear to have been performed in connection with an associate, and were as follows: When an engine came in from its run, it was taken by a man called the "yard hostler" to the clinker pit, where the clinker men knocked out the fire, and scraped the ash pan. The engine was then backed up to the water tank, where these same clinker men gave it water. It was then moved a little further, and they gave it sand.

I. One Carter, a witness for the plaintiff, testified,

against the objection of the defendant, that "it was

1. RAILROADS:
custom: com-
petency of
witness.

always the custom of the clinker men to help the hostlers." The defendant insists that the admission of this evidence was error, because Carter was not shown competent to prove a custom, and the evidence did not tend to show a general custom, but only the knowledge of the witness as to what he saw the men do. The witness had been in the employ of the defendant two years. It was his duty to call engineers and firemen who were wanted to go out on a run. His headquarters were at the roundhouse office. Butler's headquarters were at the clinker pit, west of the roundhouse. No reason is shown why this witness, by reason of his vocation, and the location of his headquarters at the roundhouse, near the clinker pit, was not competent to speak with certainty as to the work the clinker men did. Both before and after he gave the answer which is objected to, he, without objection, testified that it was the duty of the hostlers to move the tanks; that, when a tank was to be moved, they told the hostlers, and they and the clinker men moved it; that the clinker men always went down to help move the tanks. And on cross-examination he testified: "I know the clinker men went down to help the hostlers get out the tanks. I can not say, really, whether it was their duty or not. I know they did it." And, again, on redirect examination, he says: "The hostlers would always direct a clinker man to help move a tank." It will be seen that, in effect, the witness testified, without objection, several times, to the same facts as are disclosed in the answer which is objected to. Under such circumstances, even if the answer in controversy was objectionable, it could not prejudice the defendant.

II.    Witness Payden, on cross-examination, was asked as to his opinion as to the safest and best manner

**2. EVIDENCE: cross-examination.** of making a coupling of locomotive tanks. His testimony with reference thereto was stricken out on the plaintiff's motion, the court remarking: "The motion will be sustained as to what this witness would do under a certain set of circumstances, or what he thinks would be best under certain circumstances. That is a matter for the defendant to bring out in his part of the case." The ruling of the court was right. The evidence elicited was in no sense proper to be brought out in cross-examination. The witness did not see Butler when he was killed. The question which called out the answer did not relate to anything he had testified to in chief. It was, in fact, foreign to that examination.

III. An exception was taken to the court's refusal to let witness Holland testify as to the skill of Engineer Kerber, who was running the engine at the time Butler was killed. The **3. ——: of ultimate fact: admissibility.** ground of the exclusion of the evidence was that it called for an opinion of the witness,—not for any fact. It is said by the appellant that the question as to whether the engineer was skilled in his business was one of fact. If that be conceded, it is certainly one of the ultimate facts for the jury to find in the case. It seems to us that when the jury were advised as to the age of the engineer, the extent of his experience, the nature and extent of his duties, and other proper facts, they were capable of determining intelligently as to whether he was a skilled engineer. True, one of the material allegations of the petition is that he was unskilled; but we do not think it is competent to prove that he was skilled by the testimony of a witness who gives his opinion to that effect. If, however, we should concede the rule to be as is claimed by the defendant, still there was no prejudicial error in the ruling, as, at a later stage in the trial, the defendant's foreman of engineers testified, without objection, that

he had thoroughly examined the engineer, and that
he was a competent and skillful engineer for the
position of hostler.   No evidence was offered to con-
tradict this.

IV.   Witness Holland, for the defendant, on
redirect examination, testified that one S. A. Eckerson
called on him, and advised him to see Mr.
Buel (one of plaintiff's attorneys).   He
was then asked: "What relation did Mr.
Eckerson sustain to this case?   Did he come to you
from the plaintiff, or represent himself to be from the
plaintiff, in any way?"   This was objected to as not
the proper way to establish agency.   Counsel for the
defendant, in response to a question by the court, said
he did not know that he could show anything touching
his agency, except his statements, whereupon the court
refused to allow the witness to answer.   There is no
doubt as to the correctness of the ruling.   The plaintiff
could not be bound by the statements of Eckerson, who,
so far as the record shows, was a stranger to her, hav-
ing no authority whatever to speak or act in her behalf.
Surely a party's rights can not be permitted to be prej-
udiced by the statements of one not shown to have any
authority to act, and who, for aught that appears, may
be a mere meddler in that with which he has no concern.

V.   The plaintiff, when recalled in rebuttal, was
asked on cross-examination: "What did Eckerson say
to you about using this man Holland?"   An objection
was sustained to the question, as not being proper
cross-examination.   The witness had been examined in
chief with a view of impeaching the defendant's witness
Holland.   She had not been asked anything relating to
Eckerson.   The proposed evidence was clearly not
proper on cross-examination.

VI.   One Pennington was a witness for the plain-
tiff, and testified to seeing Butler under the tanks just

4. AGENCY: evi-
dence of: dec-
larations of
agent.

**5. EVIDENCE: memorandums: error without prejudice.** before he was killed. The accident appears, without conflict, to have happened in the Creston yards between ten and eleven o'clock on March 2, 1888. The defendant showed that Pennington was fireman on a freight train which arrived in Creston that day at 3:45 P. M. This evidence was elicited from the engineer of said train. The defendant offered in evidence the book kept by it, in which said engineer, and also the conductor of the second section of said train, entered the time of the arrival of their trains on that day. This book was excluded as being mere memoranda, and incompetent and immaterial. Error is assigned on this ruling. The authorities are not in entire accord on the questions here presented. It appears in this case that the engineer testified he had no recollection of the fact of the time of the arrival of the train, independent of the memorandum; that he made it at the time; that it was correct. In such a case the memorandum has often been held admissible. *Hancock v. Kelly*, 81 Ala. 368, 2 South. Rep. 281; *Stoudenmire v. Harper*, 81 Ala. 242, 1 South. Rep. 857. But see *Hoffman v. Railway Co.*, 41 N. W. Rep. 301, 40 Minn. 60; *Taylor v. Chi., M. & St. P. Railway Co.*, 80 Iowa, 431, 435. We need not, however, pass upon the correctness of the ruling rejecting this book, as the engineer who ran the train testified from the memoranda, fully, as to all the matters therein referred to; and hence, if the ruling was error, it was without prejudice.

VII. It is insisted that the deceased and his coemployee were not engaged in work in any manner **6. MASTER and servant: railroads: injury to "clinker man:" negligence of fellow servants: liability.** connected with the operation of a railway, within the meaning of section 1307 of the Code, which reads: "Every corporation operating a railway shall be liable for all damages sustained by any person, including employes of such corporation, in consequence of the neglect of agents, or by any mismanagement of the engineers or

other employees of the corporation, and in consequence of the willful wrongs, whether of commission or omission, of such agents, engineers, or other employees, when such wrongs are in any manner connected with the use and operation of any railway on or about which they shall be employed," etc. We are cited to many cases decided by this court wherein we have held that the employment was not such as to bring the employee within the provisions of the statute quoted; and counsel for the appellant maintain that if it is held that the deceased, when killed, was assisting in moving tanks, and that such labor was within the line of his duty, still he was not so connected with the use and operation of the defendant's railway as to be within the protection of the statute. In the following cases it has been held that this statute did not apply, as the employee injured or killed was at the time not engaged in, or connected with, the use and operation of a railway, within the contemplation of the law: *Schroeder v. Chi., R. I. & P. Railway Co.*, 41 Iowa, 344, 347, a case of removal of an abandoned bridge; *Potter v. Chi., R. I. & P. Railway Co.*, 46 Iowa, 399, where an employee in a machine shop was assisting in moving a driving wheel; *Smith v. B., C. R. & N. Railway Co.*, 59 Iowa, 73, a case of a section hand; *Foley v. Chi., R. I. & P. Railway Co.*, 64 Iowa, 644, 649, a car repairer; *Malone v. B., C. R. & N. Railway Co.*, 65 Iowa, 417, an engine wiper who was injured while assisting in closing a door after the passage of an engine; *Stroble v. Chi., M. & St. P. Railway Co.*, 70 Iowa, 555, 560, and *Luce v. Chi., St. P., M. & O. Railway Co.*, 67 Iowa, 75, cases of employees engaged in hoisting coal; *Matson v. Chi., R. I. & P. Railway Co.*, 68 Iowa, 22, the case of a track repairer injured by a stone hurled upon him. The statute was held applicable in the following cases: *Deppe v. Chi., R. I. & P. Railway Co.*, 36 Iowa, 52, 55, a case of one shoveling dirt on a dirt train; *Frandsen v. Chi., R. I.*

& P. Railway Co., 36 Iowa, 372, a case of a section
hand injured while in the line of his duty, repairing
track; McKnight v. Iowa & Minn. R. Construction Co.,
43 Iowa, 406, 408, a case of one shoveling gravel from a
train; Pyne v. Chi., B. & Q. Railway Co., 54 Iowa, 223,
228, where a detective in the employ of the company
was injured while in the line of his duty, walking on
the track; Handelun v. B., C. R. & N. Railway Co., 72
Iowa, 709, an employee whose duty it was to assist in
loading and unloading gravel cars, and to ride back
and forth on the cars between the pit and the place of
unloading; Nelson v. Chi., M. & St. P. Railway Co.,
73 Iowa, 576, a case of an employee injured by the oper-
ation of a ditching machine on a railroad; Smith v.
Humeston & S. Railway Co., 78 Iowa, 584, where a snow
shoveler was injured by falling from a train.

The deceased in the case at bar was killed while in
the line of his employment. His business was to
remove the ashes, cinders, and fire from locomotives, to
supply them with water and sand, and to aid in moving
or shifting engine tanks. In the proper performance
of his duties, it is shown that it was necessary for the
engine to be switched from the clinker pit track over
onto another track, to take water, and it was required
to be moved still further in order to take sand. At
such times the clinker man who was to sand and water
the engine rode on the same. Whether the statute
applies to a case like this depends on its phraseology,
and the purpose and object sought to be attained by its
enactment. In the cases heretofore cited, it has repeat-
edly been held that this statute was intended for the
protection and benefit of employees, who, from the very
nature of their employment, are exposed to the hazards
peculiar to the business of using and operating a rail-
road. It is said in Stroble v. Chi., M. & St. P. Railway
Co., 70 Iowa, 555: "This negligence, to render the
corporation liable, must be of an employee, and affect a

coemployee, who are in some manner performing work
for the purpose of moving a train, as loading or unload-
ing it, superintending, directing, or aiding its move-
ment.   The persons must be connected in some manner
with the moving of trains.   Work preparatory thereto,
which may be done away from a train, is not connected
with its movement." And it is held that a duty to turn
a turntable, and so adjust it as to connect the rails on
the table with the track leading thereto, at times when
engines are being run between the main track and the
engine house, requires the doing of an act necessary to
be done in the use and operation of a railroad. *Malone
v. B., C. R. & N. Railway Co.*, 65 Iowa, 417.   Nor is
recovery limited to cases where the injury was received
by the movement of cars or engines on the track.
*Smith v. Humeston & S. Railway Co.*, 78 Iowa, 584.   The
deceased was coupling together tanks, so that they
might be moved as directed by the defendant.   His
employment, at the time he was killed, was, in all
essential respects, the same as if he had been making
up a train,—coupling the cars.   These tanks were a
necessary part of a train.   They were being coupled so
that they could be moved to their proper places for
train service.   Surely, under such circumstances, the
deceased was within the protection of the statute.   If it
were not so, the statute would be a delusion.   To give
it any other construction, in a case like this, would rob
the beneficiaries of it of the protection which the legis-
lature intended to give them.   The evidence shows that
the work of coupling tanks is more perilous than that
of coupling cars.   To make the former coupling, tanks
must come to a stop, and must remain so until the
coupling is done.   In the performance of this duty the
deceased was exposed to the hazards arising from the
moving of the engine and tanks.

VIII.   The appellant contends that the deceased,
when killed, was not in the line of his duty; that he

7. ——:——: was only a volunteer; and hence the plain-
*work out of line of employment.* tiff can not recover. The evidence shows that these clinker men had for years been assisting in moving tanks; that they helped the host-lers to do it. It may be conceded that there is no positive evidence that it was a part of the duty of a clinker man to assist in moving and coupling tanks; but it does not appear that there was any one else whose duty it was to do this particular work. Some one was required to do it, and the fact that the clinker men had done it for years, with the knowledge of, as well as under the direction of, other employees of the defendant, was sufficient to show that it was in the line of their employment.

IX. It is said that the deceased was guilty of negligence, in consequence of which he lost his life,

8. ——:——: and that there was no negligence on the
*negligence: question for jury.* part of the defendant. By their verdict the jury have found that the accident resulted from the defendant's negligence, and that the deceased did not contribute thereto. The evidence is ample to sustain the verdict, and we can not disturb it. It appears that Butler was, when killed, in the act of coupling two tanks together; that to do so (there being no bumpers on the tanks), he was compelled to get under the ends of the tanks, as he did, and while in this position the engine attached to one of the tanks was so moved as to kill him. It was a question for the jury, under all the evidence, as to whether the defend-ant's engineer was negligent in thus moving the engine, and we can not say that the evidence did not justify their finding.

X. We can not discuss the many other errors assigned. We have examined all of them, and have read with care the instructions given and refused, and find no reversible error.

The judgment of the district court is AFFIRMED.