M. E. MONSON, Appellee, v. CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, Appellant.

RAILROADS: Negligence—Defective Crossing—Notice. A railway company will be presumed to have had notice of the condition of its crossing, which had remained in the same condition for several years.

**EVIDENCE:** Opinion Evidence—Value—Injured Automobile. An owner of an automobile, with some fair knowledge of its value prior to injury, may testify to its value in a described injured condition.

**RAILROADS:** Accident at Crossing—Ownership of Train—Evidence. Evidence reviewed, and held sufficient to justify a finding by the jury that the train in question was owned and operated by the defendant company.

**APPEAL AND ERROR:** Harmless Error—Belated Objection to Incompetent Testimony. Permitting objectionable testimony to go into the record without objection precludes basing reversible error on the subsequent reception, over objection, of substantially the same testimony.

**RAILROADS:** Accident at Crossing—Sufficiency of Crossing—''Convenient'' Crossing—Instructions. It is not error for the trial court to instruct that, before plaintiff can recover, he must show that defendant's crossing was not "safe and convenient," the statute requiring the maintenance of a "good, sufficient, and safe" crossing.

**RAILROADS:** Accident at Crossing—Negligent Operation of Train—Evidence—Sufficiency. Evidence reviewed, and held sufficient to carry to the jury the question whether defendant was negligent in running its train against and over an automobile stalled upon a railway track.

**RAILROADS:** Accident at Crossing—Duty in Maintenance of Crossings—Evidence. It is the duty of a railway company to maintain reasonably safe crossings where the tracks intersect highways, and just what construction on the part of the company will satisfy these requirements is ordinarily a question for the jury, in view of all the circumstances. So held where a crossing was planked diagonally, on account of the sharp angle at which the track cut the public highway.

**RAILROADS:** Accident at Crossing—Liability Irrespective of Plaintiff's Negligence—Last Clear Chance. An instruction that, if a train crew, by the exercise of reasonable vigilance, *could* have discovered that an automobile was stalled on the track at a public crossing, in time to have prevented a collision, and failed so to do, the defendant company would be liable, even though the plaintiff may have been negligent in getting his

car in such a position, is not prejudicially erroneous, when the record conclusively shows that the train crew did actually see the plaintiff in his position of peril in time to have avoided the injury.

NEGLIGENCE: Contributory Negligence—When Plaintiff's Negligence is Inoperative. The negligence of one in causing his automobile to become hopelessly stalled upon a railroad track *at a public highway crossing* becomes immaterial if the crew of an approaching train did see, or in the exercise of reasonable diligence ought to have seen, the plight of the machine and avoided a collision, and did not do so.

*Appeal from Wright District Court.*—C. E. Albrook, Judge.

OCTOBER 28, 1916.

REHEARING DENIED DECEMBER 14, 1917.

THIS is an action at law to recover damages from the defendant for its alleged negligence in striking and injuring plaintiff's automobile. There was a trial to a jury, and a verdict and judgment in favor of plaintiff in the sum of $800. The defendant appeals.—*Affirmed.*

*F. W. Sargent, Ladd & Rogers,* and *Robert J. Bannister,* for appellant.

*Sylvester Flynn,* for appellee.

PRESTON, J.—The issues and claim, as stated by plaintiff, are substantially this:

On July 12, 1912, the plaintiff, accompanied by his wife and Mrs. Berg, undertook to make a trip by automobile from Elmore, Minnesota, to Manson, Iowa. The route selected passed through Goldfield and Eagle Grove. The automobile was a 4-cylinder, 40-horse power, 5-passenger Marion touring car, then in good condition and working well. It had been used less than one year, and was worth $1,250.

At all times mentioned, the Chicago, Rock Island & Pacific Railway Company was a duly organized corporation, engaged in owning and operating a railway system, one line of which extended through Goldfield, Iowa. About three fourths of a mile northwest of Goldfield, the public highway, extending east and west, is intersected by the defendant's right of way and railroad track, which cross the highway diagonally from southeast to northwest.

It is alleged that the defendant was

1. RAILROADS: negligence: defective crossing: notice. negligent in the construction and maintenance of its crossing over that public highway, and in the operation of its train on that occasion; that the crossing was insufficient in the following respect: it was not properly planked. The crossing was composed of six planks, laid lengthwise and resting upon the ties supporting the two 5-inch steel rails. The west plank of that crossing was properly placed just outside of the west rail. The first plank east of the west rail was placed 15 inches farther south than the north end of the west plank. The third plank was placed 15 inches farther south than the one adjoining it on the west, and lacked 30 inches of being in line with the north end of the west plank in this crossing. The fourth plank was set 15 inches farther south than was the one adjoining it on the west, and lacked 45 inches of being in line with the north end of the west plank in the crossing. The fifth plank was set 15 inches farther south than was the plank just west of it, and lacked 5 feet of being in line with the north end of the west plank in that crossing. The sixth plank was just east of the east rail, and was set a number of inches farther south than was the one on the west side of that rail. An unplanked space or hole about 5 inches deep was left between the rails in the north end of that crossing. The part of the roadbed just east of the unplanked portion of the crossing was graded and filled

for a distance of about 3 feet east of the east rail, and from that point slanted downward, and ended in an open ditch, which extended along the grade. This ditch was about 2½ feet deep, and formed a hole in the approach to that part of the crossing. The west rail was 3¼ inches higher than the east one. The crossing was higher than the road west of it. The crossing had been in this condition for years prior to this accident, and the defendant was charged with implied notice of it.

The plaintiff had never seen this crossing before, and knew nothing concerning it. When he got within a short distance of the crossing, plaintiff stopped his machine in the beaten path and near the south line of the road. He looked and listened. There was no train in sight. He then started his car toward the track; he noticed the south end of the west plank, and turned to the north and started straight east over the crossing. The front wheel on the north side of his car ran into the unplanked space or hole in the north end of the crossing, and struck the east rail with such force that it swerved the car out of its course and turned it toward the northeast. The front wheel went over the east rail and into the ditch just east of the unplanked part of the crossing. The hind wheel on the north side of the car caught in the hole between the rails. The front wheel on that side caught in the hole or ditch in the approach. There the car stuck, and Mr. Monson was unable to move it either backward or forward, or to extricate it from that position. They heard a train approaching. Plaintiff undertook to detach the tail lamp for the purpose of flagging the train. In jerking this light from the machine, it went out.

The side light on the north side of the machine was then burning brightly, and could be plainly seen in approaching from the northwest for over half a mile. To flag the train, the women waved scarfs and screamed.

Plaintiff took hold of the top of the side light and moved it backward and forward as far as the bracket would permit.

The defendant's train consisted of a locomotive, a number of cars loaded with gravel, and a way car. The crew in charge of this train saw the light on or near this crossing, when the train came over the hill about three fourths of a mile from the crossing. Thereafter, the train slowed down, and came almost to a stop when about 100 yards from the crossing. The train then came forward, struck the automobile, hurled it from the track, and damaged it.

The plaintiff alleges that the defendant was negligent in the operation of the train in that, with full knowledge of the dangerous character of said crossing, the defendant's agents, employees, and representatives in charge of said train, saw and knew, or by the exercise of reasonable diligence should have seen and known, in time to have stopped said train and to have avoided striking said automobile, that the automobile was then caught in a place of danger on the public crossing, and would be destroyed unless the train was stopped before striking said automobile, and that they failed to stop said train in time to avoid collision with said car. As a direct result of the defendant's negligence in running its train over said car, after the latter was caught on said defectively constructed crossing, plaintiff sustained damages.

The defendant filed a general denial, and also specially pleaded contributory negligence on the part of the plaintiff, and, in defense, contended that the crossing was properly planked with a good and sufficient roadway; that the drainage ditch was necessary, and was covered for a width of 24 feet, which constituted a part of a good, sufficient, and safe crossing; that the plaintiff drove upon said crossing at night without any headlights, and, instead of keeping in the road, drove off the road to the north and into the ditch;

that the accident occurred without any negligence on the part of the defendant, and was caused by plaintiff's own careless driving.

Defendant further contended that the train which ran into the plaintiff's automobile was a gravel train of the St. Paul &' Kansas City Short Line Railroad Company, which was hauling gravel over the defendant's line of road for use in ballasting the track of the St. Paul & Kansas City Short Line Railroad Company south of Iowa Falls, and therefore that the defendant company was not responsible for the negligence, if any, of the employees on the said train.

There was a conflict in the evidence as to whether the headlights on plaintiff's automobile were lighted; but, as we understand it, there is no dispute in the evidence of the fact that the oil side lamps were burning. There was evidence on behalf of plaintiff tending to show that it was getting dark, or was dark, when plaintiff reached the crossing in question; that at Renwick plaintiff stopped, obtained oil, and filled the rear lamp; that the lamps were then lighted, but were not turned on full strength; about half a mile north of this crossing, plaintiff met two men, of whom he inquired the way to Goldfield; soon after leaving them, plaintiff stopped, and turned up his Presto lights; when he approached the crossing, plaintiff thought he heard a train whistle, and stopped some distance west of the crossing, got out of his car, and looked in both directions; finding no train within sight or hearing distance, he started to drive toward the crossing; the railroad crossing is about one foot higher than the road west of it; the plank portion of the crossing was $9\frac{1}{2}$ feet wide; the traveled track immediately east of the crossing was $10\frac{1}{2}$ feet; there was a hole about $2\frac{1}{2}$ feet deep at the east of the crossing and a short distance from the east rail; it was about 2 feet from the north side of the traveled track to the end of the cul-

vert; the hole begins at the north end of the culvert and runs northwesterly, parallel with the grade; it is an open ditch for carrying surface water to the culvert; it is 4 feet from the east rail at the north of the railroad crossing to the point where the roadbed begins to slope towards the open ditch, and 7 feet from the east rail to the bottom of the ditch; the ditch was overgrown with weeds; the planks composing the crossing before referred to were 16 feet long, 4 inches thick, and beveled at each end; the north end of the fifth plank was between 5 and 6 feet farther south than was the north end of the first plank on the west side of the crossing; this left an unplanked, three-cornered space or hole 5 inches deep between the rails in the north end of the crossing. When plaintiff stopped his machine to look for a train, he was about 4 rods west of the crossing, and well to the south of the traveled part of the road, and knew nothing in regard to the construction of the crossing. Approaching the crossing, plaintiff was sitting on the right-hand side of his car, which was running at about 6 miles an hour; he saw the south end of the west plank, and, thinking he was too far south, he turned the car about 3 feet to the north, and undertook to drive straight east over the north part of the crossing; going up the incline caused the lights on the automobile to be thrown up, so that they did not light the crossing; the front wheel on the north side of the machine ran into the unplanked part of the crossing, and struck the east rail with sufficient force to throw the car out of line, raising the wheel over the rail, and plunging it into the ditch. The hind wheel on the north side of the car caught in the hole between the rails; the axles were on the ground. Plaintiff and those with him tried to extricate the car from its position, but were unable to do so. The north side light was burning brightly, and could be plainly seen from the direction in which the train was coming, and it

was in fact seen by the trainmen, as plaintiff claims, when the train came over the hill, three quarters of a mile from the crossing. Plaintiff's claim is that, after seeing the light, the trainmen slowed the train down almost to a stop, but made no further effort to avoid the collision. There is evidence that, for several minutes after the car was caught on the crossing, the train was first seen approaching. Plaintiff and those with him testified that they were "hollering" to get.the crew to stop the train before it reached the crossing; the women waved their scarfs, and plaintiff tried to flag the train by movements of the side light. There is evidence that the employees in charge of the train saw the light and heard the "hollering" in time to stop the train and avoid the accident. The train was running about 8 miles an hour when it struck the automobile, and stopped within the length of the train.

The engineer in charge of the train testified, in part, as follows:

"There was nothing to obstruct my view from the time I came over the hill until we got down to the crossing. There was nothing to prevent my seeing the light just as soon as the fireman saw it. I don't know whether I saw it as soon as he did or not. He said nothing to me about the light near the crossing until I discovered it myself. Just as soon as I came on the crossing and struck the automobile, I applied the air. When we struck the automobile, it sounded like tearing up the crossing plank,—kind of a roaring noise. That was the first I heard. That was the first thing I did toward stopping the train. We stopped within the length of the train, after applying the air. We were hauling an average load for that engine. The engine was capable of handling the train. There is no reason why I could not have stopped that train within its length before we reached the crossing, if I had applied the emergency. No effort was made to stop it. * * * I heard them

yelling when the automobile was hit. At that time, the train was making as much noise as it ever does. When I saw the light near the track from where I was sitting, I could not tell whether it was right over the rail or a little east of the rail. I have been railroading 18 years, and have known of farmers standing at a crossing without moving at that hour of night, while we were going three quarters of a mile. There is not an instance of that kind that I can now recall."

He testifies also that he saw no one on the crossing waving; that he heard yelling and hollering when the pilot hit the automobile, and that this was the first notice he had of anything wrong at the crossing; that he knew there was a public crossing there; thinks he did not see the light at the crossing as soon as he came over the hill, but would judge he saw it about 100 yards away; that the fireman didn't say anything to him about the light, but that he discovered it himself. The evidence of both plaintiff and defendant gives the value of the car at from $1,000 to $1,200, immediately before the accident. The value of the automobile in its wrecked condition was placed by plaintiff's witnesses at from nothing to $125. The defendant offered no evidence on the value of the car in its wrecked condition.

Witness Givens testified that he had followed the automobile repair business for nearly 5 years, and that he saw plaintiff's car about seven o'clock the next morning after the accident; that he took it to the garage and took it apart. He testified that the cash market value of plaintiff's car in the condition he found it after the accident at Goldfield, Iowa, was $100, and that it was worth $1,200, immediately before. He also testified without objection that it would cost in the neighborhood of $800 to repair the car, which would include the work and material, both.

There is evidence relied upon by defendant, tending to show that plaintiff arrived in the vicinity of Goldfield at about 9:30 P. M., as some witnesses put it—others 10:30; and that it was dark, and there was no moon; that, approaching the crossing, the wagon road comes down a long hill from the northwest, parallel with the railroad, and makes a turn to the east, crossing the track.

There is evidence contradicting plaintiff's testimony as to just how plaintiff got his car into the ditch. There is evidence tending to show that the crossing in question was built in the customary way; that the plaintiff's car was stalled on the track about a minute before the train appeared, and that the headlight of the train was visible before the automobile was struck; that the trainmen saw the light at the crossing before they got to it, but that it appeared to be clear of the track; that it appeared like some farmers going across the highway; that it remained stationary. We have not attempted to set out the evidence at length, but only the general tendency of it. As to the disputed questions of fact, it was, of course, for the jury to determine.

2. EVIDENCE: opinion evidence: value: injured automobile.

1. The first two errors assigned relate to the ruling of the court in receiving evidence over objection of defendant as to the value of the automobile immediately before the accident and immediately after. The question is argued at considerable length, but we think there is no merit in the contention at this point. There was evidence of a number of other witnesses as to the value both before and after, and as to the cost to rebuild or repair the machine. The defendant introduced no evidence as to the value afterwards. Plaintiff was owner of the car, had purchased it, and his testimony shows some familiarity with the value of such a car before it was injured. After it was wrecked, doubtless it had no market value, strictly speaking, so that the question is somewhat akin to cases where a man

or his wife is permitted to testify to the value of clothing and household goods which have no market value. The character of the injuries to the machine was described. It is true that plaintiff, as a witness, said at first that he did not know the value of the machine in its wrecked condition, but afterwards said he did know. Witnesses become confused sometimes when asked if they know the value of such an article when asked in that way, instead of being asked if they are acquainted with values so as to have an opinion. It is a matter of opinion. Jurors are not required to take the estimate as to value of any of the witnesses, but may use their own judgment. *Converse v. Morse,* 149 Iowa 454, 456. The weight of the evidence is for the jury. The rule as to competency of witnesses on questions of value is liberally construed. *City Nat. Bank v. Jordan,* 139 Iowa 499, 504. We think that, under the record, there was no prejudicial error at this point.

3. RAILROADS: accident at crossing: ownership of train: evidence.

2. By motion for a directed verdict, and by a requested instruction which was refused, the defendant sought to raise the question that it was not liable, because the persons in charge of the train were not its employees, but the employees of another company. The requested instruction is as follows: "The employees of the train in question being employees of another company, the defendant is not liable for any acts of theirs in the operation of said train." The court gave no specific instruction covering this point, but did instruct the jury, substantially, that, before plaintiff could recover, he must show that plaintiff was injured by the negligence of defendant's employees. This thought is covered by Instructions 4, 6, and 6-B. The evidence on this point, which was brought out for the first time by defendant in its evidence, was substantially this: Defendant's witness Kite was the party in charge of the train for the company. When asked on cross-examination how long he

had been working for the Rock Island Company, he answered: "Since May." This would be May, 1912, which would be before the accident. The conductor, when asked if he was in the employ of the Rock Island Railway at the time of the accident, answered: "The St. Paul and Kansas City Division of the Rock Island, I suppose." The engineer testified that the St. Paul and Kansas City Short Line is under the control of the Rock Island, and said that, as near as he understood it, this road was taken over by the Rock Island, and that they were running over this line since May 22d. We think the evidence was sufficient to warrant the jury in finding, as it must have found under the instructions, that it was defendant's train, and the employees were those of defendant, and that there is no dispute in the evidence on this point. There is nothing in the record to show what the St. Paul and Kansas City Short Line is, or that there is or ever was a railway corporation of that name. There is nothing to show that it was a lessee of the Rock Island, or what relation is sustained to that company, other than that the evidence seems to show that it was a part of the Rock Island system.

It is contended by appellee that, under Section 3629, Code, 1897, any defense showing matters of justification, excuse, discharge, or release, and any defense which admits the facts of the adverse pleading, but by some other method seeks to avoid their legal effect, must be specially pleaded, and they contend that defendant filed no pleading raising any such issue or such a defense. They contend also that, even if it be true that the train which struck plaintiff's machine belonged to another railroad company, this would not release the defendant from liability. They cite Code Section 2039, which is as follows:

"All the duties and liabilities imposed by law upon corporations owning or operating railways shall apply to all lessees or other persons owning or operating such railways

as fully as if they were expressly named herein, and any action which might be brought or penalty enforced against any such corporation by virtue of any provisions of law may be brought or enforced against such lessees or other persons."

On the proposition that a railway company is liable for the negligent operation of trains over its lines by its lessees or by other persons using the railroad with defendant's permission, they cite the following cases: *Illinois Cent. R. Co. v. Barron*, 5 Wall. 90 (18 L. Ed. 591); *Chicago, M. & St. P. R. Co. v. McCarthy*, 20 Ill. 385; *Railroad Co. v. Brown*, 17 Wall. 445 (21 L. Ed. 675); *Bower v. B. & S. W. R. Co.*, 42 Iowa 546; *DeLashmutt v. Chicago, B. & Q. R. Co.*, 148 Iowa 556; 60 Am. & Eng. R. R. Cases, Ann. 15; *North Carolina R. Co. v. Zachary*, 232 U. S. 248 (58 L. Ed. 591); *Illinois Cent. R. Co. v. Sheegog*, 215 U. S. 308, 317, 319 (54 L. Ed. 208, 212); *West Chicago Street R. Co. v. Horne*, 197 Ill. 250 (64 N. E. 331); *Pennsylvania Co. v. Ellett*, 132 Ill. 654 (24 N. E. 559); *Chicago, B. & Q. R. Co. v. Willard*, 220 U. S. 413, 421 (55 L. Ed. 521, 523); *Heron v. St. Paul M. & M. R. Co.*, 68 Minn. 542 (71 N. W. 706); *St. Louis, Iron Mt. & So. R. Co. v. Chappell*, 102 S. W. 893 (10 L. R. A. [N. S.] 1175).

There are cases holding to the contrary. But we do not deem it necessary to determine the question of pleading or the last-named question in this case, because, as already stated, the evidence shows that the train was being operated by the employees of the defendant company.

3. It is thought the court erred in overruling defendant's objection to questions asked witness Blewitt, which, as appellant claims, relate to other similar occurrences. Cases are cited under this to support the proposition that evidence of other accidents is inadmissible, and that it is not within

4. APPEAL AND ERROR: harmless error: belated objection to incompetent testimony.

the scope of expert evidence to prove what was sought to be proved by the witness in this case; but this objection was not made, except, perhaps, to one of the last questions, after the witness had gone somewhat into detail on the subject. The objection was that it was not cross-examination. Whether it was cross-examination is largely a question of discretion of the trial court. This witness was first used by plaintiff, and in that examination gave a general description of the railroad crossing and surroundings. He was afterwards called as a witness for defendant, and was asked, on direct examination, as to the view of the crossing as it would appear to a person approaching the crossing in an automobile after dark and driving across it from west to east. He gave it as his opinion that there was nothing in the situation to obstruct the driver's view of the planking in this crossing. The defendant then had him describe the Marion car as to length of wheel base, location of lights, position of the lamps, springs, and the length of the machine.

Upon cross-examination, he detailed, without any objection from the defendant, the exact construction of this crossing, the location of the ditch east of the north end of the crossing, and the weeds and grass which plaintiff claimed concealed the open ditch into which the north front wheel of the plaintiff's machine plunged, when the car struck the unplanked part of the crossing, swerved from its regular course, and passed over the east rail of the track. Only three of the many questions asked this witness on cross-examination were objected to. When asked in respect to driving an automobile over such a crossing as this, and under circumstances like those in which the plaintiff was placed, and striking the earth as the plaintiff did, the witness answered, over defendant's objection that it was not cross-examination, that he never had an experience of that kind, as he always kept as near the center as possible. The

following question was asked the witness, and he answered it without objection:

"Q. You never happened to meet with an experience of that kind? A. I did in one case, but not on that crossing. Q. What was the effect? (Objected to as not proper cross-examination. Objection overruled. Defendant excepts.) A. The effect was a blow-out. I burst my tire, and I had to replace it."

This answer could have no effect upon the rights of the parties in this case, because no question of a blow-out or of a ruptured tire is involved. The interrogatory was germane to the question upon which the defendant had previously obtained the opinion of the witness. No objection was made to these two questions then asked the witness:

"Q. You were not caught on the crossing? A. I struck the rail on one side. I went a little to the right, but struck the rail instead of keeping squarely on the plank. Q. What effect did that have on your machine,—on the rear of the machine? A. Well, it swung it around pretty badly."

Having permitted these questions to be answered, without objection, the defendant is not in position to complain about the next question and answer, which were as follows:

"Q. After your wheel had gone into the ditch, did that change the course in which you were going? (Objected to as not cross-examination, asking for the conclusion and opinion of the witness. Objection overruled. Defendant excepts.) A. It jerked me clear out of line. It jerked my machine clear out of line from where I was running."

The witness's answer merely detailed the facts in reference to his own experience. Defendant did not ask the trial court to exclude the answer. The answer was substantially the same as that given without objection in the two questions immediately preceding it. Manifestly, it

could not have been prejudicial to the defendant, because the information contained in this answer had previously been fully given in substance to the jury, without any objection's being urged by the defendant. Having thus permitted the other questions to be answered without objection, the defendant cannot now complain because of the repetition. In *Butler v. Chicago, B. & Q. R. Co.*, 87 Iowa 206, Par. 3, the court said:

"It will be seen that, in effect, the witness testified without objection several times to the same facts as disclosed in the answer which is objected to. Under such circumstances, even if the answer in controversy was objectionable, it could not prejudice defendant."

We think there was no error at this point.

4. The next error assigned is that the

5. RAILROADS: accident at crossing: sufficiency of crossing: "convenient": crossing: instructions.

court erred in Instruction No. 4, in requiring defendant to maintain a "convenient" crossing for public use, and in submitting to the jury as a ground of negligence the laying of defendant's track diagonally across the highway without so placing the planks as to cover the entire space between the rails. A part of Instruction 4 is as follows:

"Before the plaintiff can recover in this action any sum whatever, he must establish by a preponderance of the evidence that the defendant railway company, at the highway crossing complained of, did not maintain a safe and 'convenient' crossing for public use."

Complaint is made because of the use of the word "convenient." Appellant says that the law provides that a railway company shall construct and maintain a good, sufficient, and safe crossing. It occurs to us that the requirement of the statute in requiring a good, sufficient, and safe crossing is a greater requirement than that stated in the instruction, which requires a safe and convenient crossing.

Doubtless it would have been better to have followed the language of the statute.

It is contended by appellee that no exception or objection was made by appellant to the use of the word "convenient" in the instruction, and that no question was there raised in regard to the part of the instruction now challenged, and that, therefore, the question may not be considered on appeal. However this may be, we think the instruction is not susceptible to the criticism made by appellant. The word "convenient," in the sense in which it is used in this instruction, means "suitable, appropriate, or fit for the purpose." Webster defines convenient: "Fit, adapted, suitable, proper, becoming, appropriate." We think there was nothing in the instruction which could mislead the jury.

6. RAILROADS: accident at crossing: negligent operation of train: evidence: sufficiency.

5. Defendant contends that there was no negligence in the operation of the train, and particularly as against this defendant, and that the court erred in submitting that question to the jury. Some of the evidence bearing upon this question has been referred to, and there is other evidence on the point. Without going into it further, we think this was a question for the jury. We have already discussed the question as to whether the employees in charge of the train were the employees of this defendant.

7. RAILROADS: accident at crossing: duty in maintenance of crossing: evidence.

6. It is next contended that the court erred in overruling defendant's motion to direct a verdict on the ground that there was no negligence shown in the construction and maintenance of the crossing, and in submitting that question to the jury. This, too, we think, was a question for the jury. It is argued that it is not necessary, on a country crossing, to construct a crossing the full width of the highway, and that the company has performed its duty when it has properly constructed ap-

proaches and embankments for the width of the portion of the highway available and actually in use; and cases are cited in support of these propositions. No claim was made by plaintiff, and the jury was not instructed, that it was necessary for defendant to construct a crossing the full width of the highway. It is the duty of a railroad company to construct and maintain reasonably safe crossings at all points where its tracks intersect highways, and it is liable for injury and damages resulting from failure to perform this duty. Code, Sections 2017, 2021, and 2054; *Farley v. C., R. I. & P. R. Co.*, 42 Iowa 234; *City of Newton v. Chicago, R. I. & P. R. Co.*, 66 Iowa 442, at 424; *Funston v. Chicago, R. I. & P. R. Co.*, 61 Iowa 452. See also *Gray v. Chicago, R. I. & P. R. Co.*, 143 Iowa 268; *Tarashonsky v. Illinois Cent. R. Co.*, 139 Iowa 709. Considering the construction of the planking and the ditch and the condition of the crossing generally, it was a question for the jury as to whether the defendant had performed its duty in this regard.

8. RAILROADS : accident at crossing : liability irrespective of plaintiff's negligence : last clear chance.    One of the questions argued is the question as to the last clear chance, and the instruction of the court on that subject. Plaintiff alleged in his petition, as one of the grounds of negligence, that the trainmen saw and knew, or by the exercise of reasonable diligence should have seen and known, that plaintiff's automobile was caught in a place of danger on the public crossing, and would be destroyed unless the train was stopped before striking said automobile, and that they failed to stop said train in time to avoid collision with plaintiff's car. A part of Instruction No. 4 on this subject reads:

"But the plaintiff may recover if he has established by a preponderance of the evidence the fact alleged that the defendant was negligent as alleged, through its employes, in the operation of its train over and along its said rail-

road and across said crossing, if, by the exercise of ordinary and reasonable care and diligence, in the operation of its said train, said employes of the said defendant might have avoided the collision with plaintiff's car."

As we understand it, the same state of facts is relied upon as coming within the doctrine of last clear chance. The defendant pleaded specially that plaintiff was guilty of contributory negligence, and was making that claim on the trial. The trial court instructed the jury on the question of the alleged contributory negligence of plaintiff in getting his automobile in the position it was in on the crossing, and doubtless considered that there was evidence for the jury on that point, and that the jury might find that plaintiff was guilty of contributory. negligence. To meet this phase of the case, the trial court gave Instruction 5-A, which is as follows:

"If you find from all the evidence in this case, when weighed in the light of these instructions, that it has been established by a preponderance of the evidence that the employes of the defendant company in charge of defendant's gravel train, *by the exercise of reasonable vigilance could have discovered the position of plaintiff's car in time to have averted a collision therewith,* and did not do so, the defendant would be liable to plaintiff for all damages accruing to him as the direct result of such collision; and this would be true even though you should find from the evidence before you that the plaintiff was guilty of negligence on his part in getting his car in the place it was in when the collision with it occurred on the part of defendant's train, and even though you should also find that the crossing in question was at the time in a reasonably safe condition for public use."

The words italicized are the part complained of. It is assigned as error that the instruction is erroneous because,

as defendant contends, in it the jury was told that, if plaintiff was guilty of contributory negligence, defendant was liable if its employees, by the exercise of reasonable diligence, could have discovered plaintiff's position; and defendant says further that there was no evidence to support the question of last clear chance. This last proposition is upon the theory that, under the doctrine of last clear chance, it must, as defendant contends, appear that the persons in charge of the train actually knew of plaintiff's dangerous situation. Appellant argues that the vice of the instruction in question is that it did not tell the jury that the question for determination was whether the train employees actually realized the position plaintiff's automobile was in, in time to avoid injuring it, but did tell the jury that it was for them to determine whether, by the exercise of reasonable vigilance, said employees could have discovered plaintiff's position in time to avoid the injury, notwithstanding the fact that he put himself in such position, as defendant says, by his own carelessness.

In the reply argument, defendant concedes the rule to be that, under the doctrine of the case of *Purcell v. Chicago & N. W. R. Co.*, 117 Iowa 667, *Dale v. Coal Co.*, 131 Iowa 67, and other cases, the jury may determine from all the circumstances in the case whether the trainmen did actually know of plaintiff's dangerous situation, notwithstanding the testimony of the trainmen that they did not know. Appellee argues that there was evidence from which the jury would have been justified in finding from the evidence and all the circumstances that the trainmen did know of plaintiff's situation in time to avoid the injury. We think this is so, and that the trial court might have properly so instructed the jury, had there been any necessity for instructing at all on the question of last clear chance.

The majority hold that this instruction was not preju-

dicial, because the evidence showed conclusively that the fireman and trainmen did see the plaintiff and his peril for a considerable distance before they reached the crossing, and up to the time of the collision, and in time to have avoided the injury.

The trial court did instruct the jury, as to one of the grounds of negligence set up in the petition, that a recovery would be authorized if the trainmen could have, by the exercise of reasonable vigilance, discovered plaintiff's position and avoided injuring him. No complaint is made by defendant of such instructions as to the original negligence set up in the petition. This same matter is relied upon by appellee as bringing the case within the doctrine of last clear chance.

9. NEGLIGENCE: contributory negligence: when plaintiff's negligence is inoperative.

After the automobile became stalled in the ditch and in the hole on the crossing, plaintiff tried in every way he could to release the machine. His situation was then no different than as though his machine had become stalled without any fault upon his part; and to hold that, under such circumstances, the trainmen in charge of an approaching train are not required to look out for a person so on the track, is to hold that such trainmen may wilfully run down a man who is so fastened upon a public crossing, notwithstanding that they could have, by the exercise of ordinary care, discovered his position and avoided the injury. What we have just said applies more to this question as set out in the petition as a ground of negligence.

We have repeatedly held that persons who are traveling over a highway or street crossing or places where the public is licensed to pass, are not trespassers, and are where they have a right to be, and the railway company owes them the active duty of keeping a lookout for them. *Black v. Burlington, C. R. & M. R. Co.,* 38 Iowa 515; *Hart v.*

*C., R. I. & P. R. Co.,* 56 Iowa 166; *Kinyon v. Chicago & N. W. R. Co.,* 118 Iowa 349; *Thomas v. Chicago, M. & St. P. R. Co.,* 103 Iowa 649. And that the company owes the same duty in respect to property rightfully using the crossing. *Wooster v. Chicago, M. & St. P. R. Co.,* 74 Iowa 593; *Ressler v. Wabash R. Co.,* 152 Iowa 449; *Graybill v. Chicago, M. & St. P. R. Co.,* 112 Iowa 738; *Hartman v. Chicago G. W. R. Co.,* 132 Iowa 582.

These last two propositions are conceded by appellant in its reply brief. Appellant also contends that there is no ground for the doctrine of last clear chance where, after plaintiff's peril is discovered, the engineer did all he could to avoid injuring him, and cites *Hoffard v. Illinois Cent. R. Co.,* 138 Iowa 543; and they contend that, under the evidence in this case, the trainmen did all they could to avoid injuring him.

We should, perhaps, set out a little more of the testimony. Some of it, and the efforts of the plaintiff and those with him to flag or stop the train, have already been referred to. Some of the trainmen testify that, after they struck the automobile, the train was stopped within the length of the train, some 800 or 900 feet, and one of them says he thought they made a good stop. The evidence shows that the side light of plaintiff's automobile was burning, and was seen by defendant's brakeman, who was on the engine when the train came over the hill, three quarters of a mile from this crossing; and he testifies that he had a clear, unobstructed view from that point to the crossing; that he kept watching the light; that the train was slowing down; that he knew there was a public crossing there, and that people often used it; that he said nothing to anybody about the light; that the light was in plain sight all the time after they came over the hill. The fireman testified:

"I noticed this light when we came over the hill, noticed that it was on or near the public crossing, and noticed that it remained there as we approached. There was no change in the position of the light.  *  *  *  I said nothing to the engineer when I saw the light.  *  *  *  I saw the whole thing, the track, the automobile, and the three people beside it, at about the same time. Ordinarily, when we see an obstruction on the track, I call the engineer's attention to it. In this case, I did not say anything to the engineer, until the automobile was struck and knocked off the track."

The conductor testified that the engineer applied the air somewhere in the neighborhood of two or three train lengths west of this crossing; that he slowed down to 8 or 10 miles an hour; that the train was slowing down when he saw the light, but did not come to a complete stop until after they struck the automobile. He says further:

"When I saw the light on the track, I did nothing, made no attempt to stop the train, and paid no attention to the light. Ordinarily, when we see a light or anything on the track, we stop if we can."

Some of the trainmen testified that the light looked as though it was at the side of the track, and that the train would clear; but they say it was not moving about, but standing still. There was evidence that the train could have been stopped within its length before the crossing was reached, if the emergency had been applied. The trainmen all say that they did not have actual knowledge of plaintiff's dangerous situation.

We think there is no reversible error in the record, and the judgment is, therefore,—*Affirmed.*

Deemer, Weaver, and Evans, JJ., concur.